(No. 66227.— ▮▮▮▮▮▮▮▮▮▮▮)
*In re* MARK E. JONES, JR., Attorney, Respondent.

*Opinion filed December 6, 1988.*

372

Mary K. Foster, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Mitchell A. Ware, of Jones, Ware & Grenard, of Chicago, for respondent.

Isaiah S. Gant, of Chicago, for *amicus curiae* Illinois Judicial Council.

JUSTICE MILLER delivered the opinion of the court:

On August 8, 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed a one-count complaint charging the respondent, Mark E. Jones, Jr., with professional misconduct in connection with a financial transaction involving Judge Reginald Holzer. The complaint alleged that, by obtaining a $15,000 bank loan at Holzer's request and then delivering the loan proceeds to Holzer, respondent violated Rule 7—110(a) (107 Ill. 2d R. 7—110(a) (giving or lending a thing of value to a judge)); Rule 1—102(a)(5) (107 Ill. 2d R. 1—102(a)(5) (engaging in conduct prejudicial to the administration of justice)); Canon 9 (107 Ill. 2d Canon 9 (failing to avoid the appearance of impropriety)); and Rule 771 (107 Ill. 2d R. 771 (engaging in actions that

tend to bring the courts and legal profession into disrepute)).

The Hearing Board concluded that respondent's conduct had violated Rule 7—110(a) and recommended that he be reprimanded for this violation. The Hearing Board further concluded, however, that because neither the respondent nor any member of his law firm had ever had a case pending before Holzer, nor had respondent, or any of his associates, ever received a court appointment from Holzer, the charges based on Rule 1—102(a)(5), Canon 9, and Rule 771 should be dismissed. Both the respondent and the Administrator filed exceptions with the Review Board. Six members of the Review Board concurred in the findings of fact and conclusions of law of the Hearing Board, but recommended that the respondent be censured for his violation of Rule 7—110(a). One member of the Review Board agreed with the Hearing Board's recommendation that respondent be reprimanded, and one member did not participate. Both the Administrator and respondent then filed exceptions in this court pursuant to Rule 753(e)(5) (107 Ill. 2d R. 753(e)(5)).

The facts of this case are basically undisputed. The respondent was licensed to practice law in 1950. Between 1963 and 1980, he served as a judge in the circuit court of Cook County. Respondent first became acquainted with Holzer either before the respondent became a judge or while he was serving on the bench. In either case, he had known Holzer for many years prior to the transaction in question. Respondent and Holzer enjoyed a casual, friendly relationship. The two men would occasionally see one another at social functions and judicial meetings. Additionally, respondent and Holzer lived in the same neighborhood and frequently walked to work together when they were both judges. Neither of the two men, however, had ever been to the other's home.

After retiring from the bench in 1980, respondent entered private practice, concentrating in civil matters, such as real estate, probate, contract, and corporate law. The respondent's firm occasionally had cases pending in the chancery division of the circuit court of Cook County during the time Holzer was assigned to that division. The Administrator, however, has not shown how frequently this occurred, nor does the record provide that information. The respondent represented clients in court (although not necessarily in the chancery division) approximately two to three times a year. Neither respondent nor any member of his law firm had ever represented a client before Holzer. However, on one occasion prior to the loan in 1984, respondent did appear before Holzer while representing himself in a purely personal matter. At that time, Holzer ruled against the respondent. Neither respondent nor any of his associates ever received an appointment from Holzer, although in 1983 and 1984 Holzer introduced two prospective clients to respondent. One of these individuals ultimately retained respondent, and respondent received approximately $1,200 in legal fees for his services.

In May 1984, Holzer telephoned respondent and asked if they could meet. Respondent agreed and Holzer went to respondent's office. Holzer explained that he was in desperate need of money and asked respondent to lend him $15,000. Respondent did not inquire why Holzer needed the money, and Holzer did not offer an explanation. Holzer did tell respondent that he was selling his condominium and that he would be able to repay the loan from the sales proceeds in 60 to 90 days. When respondent suggested that Holzer obtain a loan from a bank, Holzer informed respondent that he was borrowed "up to the hilt." Respondent told Holzer that he did not have $15,000 to lend him, but that he would try to bor-

row that amount from a bank and transfer the money to Holzer.

Respondent then borrowed $15,000 from Continental Illinois Bank and deposited the loan proceeds in his personal checking account. On May 9, 1984, respondent wrote a check for $15,000 payable to Holzer and then delivered the check to Holzer at the judge's chambers. Respondent did not obtain a note or collateral as a condition for the loan. It was understood, however, that Holzer would pay the interest charged by the bank. Approximately six months later, in November 1984, respondent received a statement from Continental Bank regarding the accrued interest on the loan. Respondent then met with Holzer and showed him the bank statement. Holzer agreed to take care of it and, a few days later, gave respondent a check for $1,028.43 made payable to Continental Bank. Respondent then forwarded the check to the bank. This one interest payment was the only payment made by Holzer on the loan. Respondent ultimately satisfied the loan obligation himself and sued Holzer for $15,000 in August 1985 (Jones v. Holzer (Cook Co. Cir. Ct.), No. 85—M1—100979). A judgment against Holzer was entered on July 23, 1986, but respondent has been unable to collect on the judgment.

Respondent testified that he agreed to obtain a loan for Holzer because he regarded the judge as a friend and because Holzer appeared to be in urgent need of money. Respondent further explained that his motive in acceding to Holzer's request was "to help out a fellow human being but more especially a fellow judge and to help him avoid some catastrophe." According to respondent, by assisting Holzer, he hoped to forestall some financial disaster which would reflect badly, not only on Holzer, but on the judiciary in general. Respondent denied any intent to curry favor with Holzer by securing funds for the judge.

The issues presented in this court are: (1) whether respondent's undisputed activities constituted professional misconduct; and, if so, (2) whether discipline should be imposed. While the Administrator charged respondent with violating Rule 1—102(a)(5), Canon 9 and Rule 771, the principal allegation, and the one on which these subsidiary charges depend, is that respondent violated Rule 7—110(a). (See *In re Corboy* (1988), 124 Ill. 2d 29, 37.) Rule 7—110(a) provides:

> "A lawyer shall not give or lend any thing of value to a judge, official, or employee of a tribunal, except that a lawyer may make a contribution to the campaign fund of a candidate for such office." 107 Ill. 2d R. 7—110(a).

Initially, respondent argues that, by obtaining a bank loan and then transferring the proceeds to Holzer, he did not give or lend a thing of value to a judge. Respondent claims that the bank was the party actually making the loan to Holzer and that both he and Holzer considered the judge as being indebted to the bank and not to respondent. Respondent reasons then that he did not give or lend anything to Holzer. Respondent contends that he acted merely as a "conduit" and "guarantor" of the funds and that such services are not "things of value" within the meaning of Rule 7—110(a).

We reject respondent's argument for several reasons. First, it ignores the fact that respondent admitted in both the complaint he filed against Holzer and in his testimony before the hearing panel that he had, in fact, loaned $15,000 to Holzer. Moreover, it is clear that Holzer was legally indebted to respondent, not the bank, for the $15,000. This is evidenced by the fact that respondent sued Holzer and eventually obtained a judgment against him for the funds he delivered to Holzer. Finally, even if we were to accept respondent's characterization of his involvement in the transaction as merely "arranging" the loan or acting as a "conduit" and

"guarantor" for the loan, his argument must fail. Such conduct in itself constitutes giving a thing of value and is thus prohibited by Rule 7—110(a).

Respondent next argues that if his actions constituted giving or lending a thing of value to a judge, Rule 7—110(a) should be read to prohibit such conduct only where it is accompanied by a corrupt or dishonest motive. Respondent contends that the purpose of Rule 7—110(a) is to prevent gifts or loans to judges which are designed to influence the judge's decisionmaking. According to respondent, because his loan to Holzer was motivated by charity and compassion, and not by any desire to curry favor or affect the judge's rulings, no violation of Rule 7—110(a) occurred.

We have recently declined a similar invitation to read an intent requirement into Rule 7—110(a). In *In re Corboy*, 124 Ill. 2d at 38, we stated: "The rule is prophylactic. It is designed not only to forestall lawyers from seeking to exercise improper influence over the judiciary, but also to eliminate even the appearance of improper influence." We held that attorney gifts or loans to judges, regardless of the attorney's motive or intent, are prohibited by Rule 7—110(a) unless the gifts or loans fall within one of the exceptions listed in Rule 65(C)(4) of the Code of Judicial Conduct (107 Ill. 2d R. 65(C)(4)), or unless it is a contribution to the judge's campaign fund as permitted by Rule 7—110(a). *Corboy*, 124 Ill. 2d at 41.

None of the recognized exceptions are applicable in the present case. Respondent makes no claim that the $15,000 was a contribution to a campaign fund (see 107 Ill. 2d R. 7—110(a)), that he was related to Holzer (see 107 Ill. 2d R. 65(C)(4)(b)), or that the loan was a wedding or engagement gift (see 107 Ill. 2d R. 65(C)(4)(b)). Moreover, we cannot conclude that a $15,000 loan constituted "ordinary social hospitality" which is allowed under Rule 65(C)(4)(b). (See *Corboy*, 124 Ill. 2d at 42-43.) Likewise,

the exception for attorneys who do not practice, and who are not likely to practice, before the judge to whom the gift or loan is made (107 Ill. 2d R. 65(C)(4)(c)) is inapplicable in this case. In *Corboy*, we stated that if an attorney's practice or that of his associates is such that he or his associates are likely to be involved in a court proceeding, then the attorney is prohibited from making a gift or loan to any judge who sits on the court where the case may be heard. (*Corboy*, 124 Ill. 2d at 43-44.) Although respondent had previously served as a judge, at the time he loaned the money to Holzer he had left the bench and was a practicing attorney in Cook County. While the Administrator has not shown the extent of respondent's practice, or that of his law firm in the circuit court of Cook County, it is undisputed that both respondent and his associates had appeared there on prior occasions and could reasonably expect to continue to do so in the future. We, therefore, conclude that respondent's loan to Judge Holzer did not fall within any of the permissible exceptions, and thus violated Rule 7—110(a).

Having determined that respondent's actions constituted professional misconduct, we must now decide what, if any, discipline is warranted. Although an attorney's mental state is not relevant for the purposes of a Rule 7—110(a) violation, it is nevertheless an appropriate factor to consider when deciding the nature and severity of the sanction to be imposed. (See *In re Clayter* (1980), 78 Ill. 2d 276, 283.) In the cases consolidated in *Corboy*, we were not called upon to determine the reasons underlying the gifts and loans to the judge. In those cases, the charitable motives of the attorneys were either uncontested or, if contested, had been resolved in the attorneys' favor by the Hearing Board. (*Corboy*, 124 Ill. 2d at 39, 48, 49.) In the present case, however, the Administrator argues that respondent's motive in extending the loan to Holzer was not entirely charitable and contends

that his intent to influence Holzer's judicial decisions can be inferred from the circumstances surrounding the loan. Respondent, on the other hand, testified that he had no improper motives in helping Holzer and insists that he was persuaded to assist the judge out of compassion for the man and out of concern for the reputation of the judiciary. The Hearing Board made no finding on this contested question of fact.

We agree with the Administrator that "[m]otive and intent are rarely the subject of direct testimony [and] they must ordinarily be inferred from conduct and from the circumstances under which that conduct took place" (*In re Schwarz* (1972), 51 Ill. 2d 334, 336). We do not believe, however, that the circumstances of this case show that respondent acted from improper motives. Admittedly, the amount of the loan, $15,000, was substantial, particularly in light of Holzer's and respondent's "casual, friendly" relationship. The relationship of the parties, coupled with the size of the loan, might suggest that respondent was not motivated entirely by charity and compassion for the financially strapped Holzer.

Still, the record before us does not provide any other plausible explanation for the loan. Although the record is far from clear on the issue, the evidence does not suggest that either respondent or any of his associates had an extensive chancery practice through which they might hope to benefit from respondent's loan to Holzer. The Administrator's only evidence regarding the firm's practice in the chancery division (where Holzer was assigned) was that the firm had "occasional" cases pending there. While respondent testified that he personally went to court two or three times a year on behalf of clients, there is no evidence showing how frequently his practice required him to appear in the chancery division. The record does indicate, however, that no member of respondent's law firm, including respondent, had ever repre-

sented a client before Holzer. Thus, it appears that the Administrator asks us to infer that respondent was willing to risk $15,000 in exchange for the chance that, on some unspecified occasion in the future, Holzer would be in a position to repay the favor. On these facts, we cannot conclude that respondent's loan to Holzer was made with the intent to influence the judge's decisions. Moreover, we do not believe it likely that the $15,000 loan to Holzer was made as some sort of gratuity for the referral by Holzer of one client who incurred only $1,200 in legal fees. Therefore, based on the record before us, we conclude that the Administrator has failed to prove that respondent's misconduct was accompanied by any corrupt or improper motive.

Absent evidence of a venal purpose, we do not believe discipline is warranted here. Prior to our decision in *Corboy*, the limits of Rule 7—110(a) had not been defined and this lack of definition created uncertainty among practicing attorneys as to precisely what conduct Rule 7—110(a) prohibited. Under these circumstances, we decline to sanction respondent for conduct which not only he, but other members of his profession, believed was proper at the time it occurred. (See *Corboy*, 124 Ill. 2d at 45, 48-49; see also *In re Friedman* (1979), 76 Ill. 2d 392; *In re Luster* (1957), 12 Ill. 2d 25.) The complaint against respondent, therefore, is discharged.

*Respondent discharged.*