(No. 67978.—

*In re* HOWARD I. LIDOV, Attorney, Respondent.

*Opinion filed May 17, 1989.—Rehearing
denied September 29, 1989.*

CLARK, J., took no part.

Naomi J. Woloshin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Jerome H. Torshen, of Chicago (Torshen, Schoenfield & Spreyer, Ltd., of counsel), for respondent.

CHIEF JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a one-count complaint alleging that respondent, Howard I. Lidov, loaned $4,000 in cash to then Judge Reginald Holzer in violation of Disciplinary Rule (DR) 7—110(A) of the Illinois Code of Professional Responsibility (1970) (Code). The hearing panel found that respondent gave a $4,000 cash loan directly to Holzer in violation of DR 7—110(A) of the Code and recommended that respondent be suspended from the practice of law for a period of one year. The Review Board adopted the hearing panel's findings and recommended that respondent be suspended from the practice of law for a period of six months. One member of the Review Board dissented and recommended that the complaint be dismissed. Respondent filed exceptions to the report and recommendation of the Review Board (107 Ill. 2d R. 753(e)(5)).

The issues presented for review are: (1) whether respondent's conduct constituted a violation of DR 7—

110(A) of the Code; and, if so, (2) what sanction, if any, should be imposed upon him.

The uncontradicted testimony of the respondent is as follows. Respondent was licensed to practice law in Illinois in April 1953. He first became acquainted with Holzer in the early 1960s. At that time, Holzer was president of the Decalogue Society and respondent was a member. Respondent and Holzer became better acquainted in the late 1960s when they were both guests at the home of a mutual friend. In subsequent years, the friendship between them grew. They would meet at various locations, including Holzer's chambers, to discuss matters which were of interest to the Jewish community. One topic they discussed was the Israel Bond Office in Chicago (Office), which respondent actively supported by purchasing and promoting the sale of Israel Bonds. In 1971, respondent tried the only case he had before Holzer.

In 1976, Holzer was a candidate in the general election for a vacancy on this court. During the summer of 1976, the Office held a dinner honoring Holzer. In order to promote its dinner, the Office planned to mail promotional materials. Holzer asked the Office if they would mail his campaign flyers with the materials promoting the dinner. The Office agreed to Holzer's request on the condition that he pay for the campaign flyers and the cost of mailing them.

Shortly thereafter, no specific date being shown in the record, Holzer asked respondent to come to his chambers. During this meeting, Holzer reminded him that he was running for a seat on the Illinois Supreme Court. Holzer then told respondent that the Office recently held a dinner in his honor and explained the arrangement he made with the Office to mail his campaign flyers with the materials promoting the dinner. Holzer then told respondent that he had insufficient campaign

funds to repay the Office for the cost of mailing and printing the campaign flyers.

Holzer knew that respondent actively supported the Office; therefore, he asked respondent to loan his campaign $4,000 so that he could repay the Office. Respondent agreed and, within 24 hours of the meeting, he removed $4,000 in cash from his safety deposit box. Respondent then went to Holzer's chambers, where he gave the $4,000 cash loan directly to Holzer. In return, Holzer gave respondent a $4,000 promissory note.

Holzer assured respondent that the loan would be repaid within 60 days. When 60 days passed and respondent had not been repaid, he persistently called Holzer, seeking repayment of the loan. Shortly thereafter, Holzer began making installment payments to respondent.

On March 21, 1977, while the loan was outstanding, respondent's case was randomly assigned to Holzer for pretrial. Over two months later, on May 31, 1977, while the loan was still outstanding, respondent's second case was randomly assigned to Holzer. Respondent is uncertain, but believes he informed opposing counsel in both cases of his loan to Holzer. Both cases were settled before proceeding to trial. The loan was fully repaid in early 1978. Respondent did not charge Holzer interest on the loan.

The first issue presented for review is whether respondent's conduct constituted a violation of DR 7—110(A) of the Code. DR 7—110(A) of the Code, at the time of the transaction, provided:

> "A lawyer shall not give or lend anything of value to a judge, official, or employee of a tribunal." Illinois Code of Professional Responsibility DR 7—110(A) (1970).

This court recently noted that DR 7—110(A) of the Code neither expressly sanctioned, nor expressly prohibited, attorney contributions to judicial campaign funds. (*In re Lane* (1989), 127 Ill. 2d 90, 101.) Thus, it was held

that DR 7—110(A) of the Code must be read in conjunction with the 1977 versions of Supreme Court Rules 61(c)(22) (58 Ill. 2d R. 61(c)(22)) and 70 (65 Ill. 2d R. 70) in order to determine what conduct was permitted and prohibited in 1977. *Lane*, 127 Ill. 2d at 101.

When DR 7—110(A) was read in conjunction with Supreme Court Rules 61(c)(22) and 70 as they existed in 1977, the result was substantially similar to the rule currently in effect and embodied in Rule 7—110(a) of the Illinois Code of Professional Responsibility. (*Lane*, 127 Ill. 2d at 102.) Rule 7—110(a) provides:

> "A lawyer shall not give or lend any thing of value to a judge, official, or employee of a tribunal, except that a lawyer may make a contribution to the campaign fund of a candidate for such office." (107 Ill. 2d R. 7—110(a).)

Thus, the rules which were in force in 1977 "prohibited attorney gifts and loans to judges while permitting attorney contributions to judicial campaign funds." *Lane*, 127 Ill. 2d at 102.

In determining the outcome of the present case, DR 7—110(A) of the Code must be read in conjunction with the 1976 versions of Supreme Court Rules 61(c)(22) and 70 in order to determine what conduct was permitted and prohibited in 1976, the year in which respondent's alleged misconduct occurred.

In 1976, Supreme Court Rule 61(c)(22) provided:

> "A judge should not accept gifts or favors from litigants, lawyers practicing before him, or others whose causes are likely to be submitted to him for judgment." 58 Ill. 2d R. 61(c)(22).

Prior to July 15, 1976, Supreme Court Rule 70 provided:

> "A candidate for a judgeship shall not personally solicit compaign [*sic*] contributions, but should establish some method which will not involve him in the direct solicitation of funds." (58 Ill. 2d R. 70.)

On July 15, 1976, the amended version of Supreme Court Rule 70 became effective and provided:

> "A candidate for election to or retention in a judicial office shall not personally solicit campaign contributions, but should establish some method which will not involve him in the direct solicitation of funds." 65 Ill. 2d R. 70.

DR 7—110(A) and Supreme Court Rule 61(c)(22) contained precisely the same language in both 1976 and 1977, while Supreme Court Rule 70 contained substantially the same language both before and after July 15, 1976. Therefore, we hold that the rules which existed in 1976 prohibited attorney gifts and loans to judges, but permitted attorney contributions to judicial campaign committees.

Thus, where, as here, an attorney is charged with violating DR 7—110(A) of the Code, it must be determined whether the gift or loan to a judge was made for campaign purposes. In the present case, the *uncontradicted* testimony of the respondent is that he gave a $4,000 cash loan directly to Holzer for a specific campaign purpose. The Administrator has, therefore, failed to present clear and convincing evidence that respondent's $4,000 cash loan to Holzer was anything but a loan for campaign purposes.

However, where, as here, respondent "claims the gift or loan was a campaign contribution, the relevant inquiry in determining whether an ethical violation has occurred is whether the gift or loan was made to a campaign committee, or whether it was *made to the judge* in violation of the rules." (Emphasis added.) (*Lane*, 127 Ill. 2d at 103.) In the present case, respondent has admitted to giving a $4,000 cash loan directly to Holzer instead of his campaign committee. As such, respondent's conduct violated DR 7—110(A) of the Code.

The second issue presented for review is what sanction, if any, should be imposed upon respondent. In de-

termining the proper sanction, it must be remembered that "the purposes of an attorney disciplinary proceeding are to preserve the integrity of the legal profession and to protect the public interest." (*In re Rothenberg* (1989), 127 Ill. 2d 139, 141.) Each attorney disciplinary proceeding is unique and must be decided on an individual basis. (*In re Holz* (1988), 125 Ill. 2d 546, 558.) Furthermore, both aggravating and mitigating factors are considered in determining the proper sanction.

DR 7—110(A) was "designed *** to forestall lawyers from seeking to exercise improper influence over the judiciary [and] *to eliminate even the appearance of improper influence.*" (Emphasis added.) (*In re Corboy* (1988), 124 Ill. 2d 29, 38.) Respondent's interest-free $4,000 cash loan was made directly to Holzer in the summer of 1976. Less than one year later, while the loan was outstanding, two of respondent's cases were randomly assigned to Holzer, but were settled before proceeding to trial. Despite the fact that both cases were settled, respondent's conduct is of the character which DR 7—110(A) was intended to prevent.

In mitigation, we note that although "an attorney's mental state is irrelevant for the purposes of determining whether a violation of DR 7—110(A) has occurred [citation], it is nonetheless an appropriate factor to consider when deciding the nature and severity of the discipline to be imposed." (*Lane*, 127 Ill. 2d at 109.) Although the Hearing Board did not elaborate on the character of the loan, respondent's *uncontradicted* testimony supports our finding that the loan was made for campaign purposes. Thus, respondent's violation of DR 7—110(A) of the Code resulted when he failed to adhere to the requirement that campaign loans be made to the judicial campaign committee, rather than to the judge personally.

Respondent's failure to make the loan to Holzer's campaign committee is similar to *Lane*; however, there

are several mitigating factors which distinguish this case from *Lane*. First, respondent's $4,000 cash loan to Holzer was evidenced by a promissory note; Lane did not receive a promissory note from Holzer. Second, respondent persistently called Holzer seeking repayment of the loan; there is no evidence that Lane made any effort to seek repayment of his loan. Third, respondent's loan to Holzer was fully repaid; Lane was not repaid in any amount. Fourth, respondent rarely appeared before Holzer; Lane and attorneys from his firm frequently appeared before Holzer. In fact, respondent's only trial before Holzer occurred in 1971, five years before the loan was made. Furthermore, two of respondent's cases were randomly assigned to Holzer for pretrial while the loan was outstanding, but were settled after the pretrial conferences. On the other hand, Lane's firm had four cases pending before Holzer at the time his loan was made and, in 1978, Holzer awarded one of Lane's clients $50,000, of which Lane's firm received a contingent fee of $12,500. Thus, those mitigating factors which distinguish the present case from *Lane* must be considered.

We also consider respondent's candor and complete cooperation throughout the disciplinary proceedings. Finally, the fact that respondent has practiced law in the State of Illinois for 36 years with an otherwise untarnished record must be noted.

For the reasons set forth above, it is the order of this court that respondent be suspended from the practice of law for six months.

*Respondent suspended.*

JUSTICE CLARK took no part in the consideration or decision of this case.