(No. 67979.—

*In re* JAMES ALAN CHATZ, Attorney, Respondent.

*Opinion filed October 25, 1989.*

500

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Richard G. Schultz and Douglas R. Stevens, of Foran, Wiss & Schultz, of Chicago, for respondent.

JUSTICE RYAN delivered the opinion of the court:

On September 10, 1986, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a two-count complaint charging that re-

spondent had violated Disciplinary Rule (DR) 7—110(A) of the Illinois Code of Professional Responsibility (1977) (Code). The Hearing Board filed a report recommending that both counts be dismissed. The Review Board agreed with the Hearing Board on the dismissal of count I, but found that count II, charging that respondent, in 1978, loaned $5,000 to then Judge Reginald Holzer, stated a violation of DR 7—110(A). As a result, the Review Board recommended that respondent be suspended from the practice of law for six months. Respondent filed exceptions with this court pursuant to Supreme Court Rule 753(e)(5) (107 Ill. 2d R. 753(e)(5)).

The issues presented for review are whether respondent's conduct violated DR 7—110(A) of the Code and, if so, what sanction, if any, should be imposed.

Respondent was licensed to practice law in Illinois in 1958. Since that time, respondent has practiced with a variety of Chicago-based firms. During the time period at issue here, he was a member of the firm of Chatz, Sugarman and Abrams. After his admission to the bar, respondent concentrated his practice in the areas of commercial law, bankruptcy, and debtor-creditor rights. He has taught at the John Marshall Law School, Northwestern University's Graduate School of Management, and the Illinois Institute of Continuing Legal Education. Respondent has lectured extensively, and has authored numerous articles in the area of commercial law. He is active in various charitable and civic organizations. Before the Hearing Board, prominent members of the legal profession, as well as other respected professionals, attested to respondent's excellent reputation.

Respondent first met Reginald Holzer at Republican Party meetings during the 1960s. Thereafter, although they were not personal friends, respondent would see Holzer at various political and religious functions. In 1976, Holzer, then a circuit judge in Cook County, told

respondent that he was going to run for the office of supreme court justice and suggested that respondent's name be placed in nomination for circuit court judge in Cook County. Both respondent and Holzer lost these election bids. In 1978, respondent was selected to become a member of the Republican Judicial Candidates Committee (RJCC). The committee's duties included slating Republican judicial candidates and conducting fundraising endeavors. Respondent stated that he was selected to the RJCC and named its chairman in February 1978.

In February or March of 1978, Judge Holzer told respondent that he had problems with unpaid debts from his 1976 supreme court judicial campaign, and asked if the RJCC could assist him. Respondent told Holzer that the RJCC could not help. Holzer then asked if respondent would contact the Exchange National Bank in Chicago to see if one of Holzer's loans could be extended. Respondent telephoned the Exchange and helped arrange an extension for Holzer. This refinancing service was the substance of count I of the Administrator's complaint, and is no longer directly at issue here. Nevertheless, respondent at this point knew that Holzer allegedly had problems with campaign finances. On May 10, 1978, Holzer met with respondent for breakfast and told respondent that he was still having problems with campaign debts, and asked respondent for a $5,000 loan. Respondent agreed to make the loan, but told Holzer that he did not have the money and would have to borrow it. Respondent then arranged a short-term loan of $5,000, at 8% interest, from his bank.

On or about May 17, 1978, Holzer telephoned respondent and asked him how the loan was coming along. Respondent told the judge that a bank had agreed to lend respondent money. Respondent then asked Judge Holzer to whom the check should be made payable.

Holzer replied that he was administering his own campaign fund and respondent should make the check out to Holzer personally. Holzer agreed to sign a promissory note for the loan.

On May 23, 1978, respondent met with Holzer and gave him a $5,000 check, payable to "Reginald Holzer." Holzer signed and returned a promissory note to respondent. Neither the note nor the check indicated that the funds were for campaign purposes. The loan was to be repaid on June 30, 1978, with no interest being charged.

Holzer failed to satisfy the loan when due, and respondent had to "roll over" his loan with his bank to avoid default. Respondent repeatedly discussed repayment of the loan with Holzer. Finally, respondent collected $3,000 from Holzer on October 19, 1978, and the balance of $2,000 in January of 1979.

Between 1978 and 1982, respondent's law firm had 12 cases pending before Holzer. In July of 1978, respondent petitioned for a receiver's fee in Schafer v. Three Star Enterprises, 78—CH—574, a case presided over by Holzer. Two days after respondent contacted Holzer regarding satisfaction of the $5,000 loan, Holzer ordered the plaintiff in the Schafer case to pay respondent $2,650 in fees, plus expenses. Respondent never revealed to opposing counsel in that case, or any other case his firm had before Holzer, his debtor-creditor relationship with the judge.

As a result of these dealings with Holzer, the Administrator filed a two-count complaint against respondent, charging him with the following acts of misconduct:

> "a. Giving or lending a thing of value to a judge in violation of Rule 7—110(A) in violation of the Illinois Code of Professional Responsibility (1977);

b. engaging in conduct that is prejudicial to the administration of justice in violation of Rule 1—102(A)(5) of the Illinois Code of Professional Responsibility (1977);

c. failing to avoid the appearance of professional impropriety in violation of Canon Nine of the Illinois Code of Professional Responsibility (1977); and

d. engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 1—102(A)(4) of the Illinois Code of Professional Responsibility."

Although the Hearing Board recommended dismissal of both counts, the Review Board found that the evidence clearly and convincingly showed that respondent violated DR 7—110(A) regarding the actions alleged in count II, the $5,000 loan to Holzer. Specifically, the Review Board relied on four factors:

"1. The check of $5,000 in no way indicated a purpose of 'campaign.' (Adm. Ex. 3)

2. The promissory note in no way revealed a purpose of 'campaign.' (Adm. Ex. 4)

3. Respondent did not possess any specific information about Holzer's 1976 campaign fund finances, (i.e. whether or not [it] had a deficit).

4. Respondent's failure to reveal his debtor-creditor relationship with Holzer to opposing counsel or parties before whom he appeared in litigation before Holzer."

The Review Board recommended a six-month suspension as the appropriate sanction for respondent's violation of DR 7—110(A). While we give due deference to the Board's findings as to the appropriate sanction, as well as to the finding of the violation itself, we note that final responsibility for making these determinations rests with this court. (*In re D'Angelo* (1988), 126 Ill. 2d 45, 52; *In re Harris* (1982), 93 Ill. 2d 285, 291-92.) The purpose of discipline is not to punish the attorney, but to maintain the integrity of the profession and to protect the public. (*In re Pappas* (1982), 92 Ill. 2d 243, 247; *In*

*re Neff* (1980), 83 Ill. 2d 20, 25.) Although this court strives for uniformity in disciplinary actions (*In re Lane* (1989), 127 Ill. 2d 90, 108; *In re Saladino* (1978), 71 Ill. 2d 263, 275), each case is unique and must be evaluated on the facts presented (*D'Angelo,* 126 Ill. 2d at 53; *In re Leonard* (1976), 64 Ill. 2d 398, 404).

The facts presented in this case clearly show that respondent loaned money directly to Holzer. Respondent contends that because this loan was made for campaign purposes, no ethical violation occurred. However, the Review Board stated in its report and recommendation: "We do not share the Hearing Board's finding that the $5,000 loan was for campaign purposes." In support of this conclusion, as noted above, the Review Board pointed out that (1) the $5,000 check in no way indicates it was given for campaign purposes; (2) the promissory note did not reveal it was for a campaign purpose, and (3) respondent did not possess any specific information about Holzer's campaign fund finances (*i.e.,* whether or not it had a deficit). Thus, the finding of the Review Board was that the $5,000 loan was not a campaign loan, but was a loan made directly to Judge Holzer and was a clear violation of DR 7—110(A), which provided that "[a] lawyer shall not give or lend anything of value to a judge." DR 7—110(A) (1977).

Whatever the nature of Holzer's obligation, whether campaign expenses or otherwise, the facts are clear that the loan was made to Holzer personally. The respondent represented that Holzer had not been able to make the first payment of $1,000, plus interest, that was due to the Exchange National Bank on the renewed $9,000 note, referred to above, and that part of the $5,000 loan was used for that purpose. However, there was no restriction or limitation placed on the use of the $5,000 loan. Part of it, or all of it, could have been and indeed may have been used for other than campaign purposes

or to retire campaign debts. In *In re Corboy* (1988), 124 Ill. 2d 29, Judge LeFevour had represented that the loans to him were to be used for the purpose of paying his mother's hospital bills; however, it was questionable whether these loans were used for that purpose. See 124 Ill. 2d at 34.

This court recently decided two cases involving campaign loans made directly to Holzer: *In re Lidov* (1989), 129 Ill. 2d 424, and *In re Lane* (1989), 127 Ill. 2d 90. In both *Lidov* and *Lane,* we held that Rule 7—110(A) must be read in concert with Supreme Court Rules 61(c)(22) (58 Ill. 2d R. 61(c)(22)) and 70 (65 Ill. 2d R. 70) to determine what conduct was prohibited at the time the respondents in those cases made loans to Holzer. (*Lidov,* 129 Ill. 2d at 427-28; *Lane,* 127 Ill. 2d at 101.) When DR 7—110(A) is read in conjunction with Supreme Court Rules 61(c)(22) and 70, the result is substantially the same as the current Rule 7—110(a) of the Code of Professional Responsibility (107 Ill. 2d R. 7—110(a); see also *Lidov,* 129 Ill. 2d at 428; *Lane,* 127 Ill. 2d at 102).

Having found that respondent violated Rule 7—110(A), we must next decide what sanction is appropriate. Although intent is irrelevant in determining whether an attorney has violated DR 7—110(A), it is a factor in ascertaining the correct sanction. (*In re Lane* (1989), 127 Ill. 2d 90, 109; *In re Ketchum* (1988), 124 Ill. 2d 50, 57-58.) "Intent and motive are rarely revealed in direct testimony, but rather must be inferred from conduct and surrounding circumstances." (*In re D'Angelo* (1988), 126 Ill. 2d 45, 56-57.) Moreover, another factor in determining the proper sanction is consideration of the aggravating and mitigating factors present in the case. (*Lane,* 127 Ill. 2d at 108.) These factors necessarily play a role in discerning what an attorney's motivations were at the time an ethical violation occurred.

The record in this case does not show that respondent acted with the intent to curry favor with Holzer. (*Cf. D'Angelo*, 126 Ill. 2d 45.) Indeed, the only evidence of Holzer "repaying" respondent is the fee granted to respondent in Schafer v. Three Star Enterprises. This connection is tenuous at best, however, as the fee received was approximately one-third the amount requested by respondent's firm. The record reveals no other instances of Holzer's reciprocating for the campaign loan by any means. The record also reveals no evidence that respondent sought favors from Holzer. Nevertheless, we believe that respondent should have known that his actions were improper. Respondent, in his role as chairman of the RJCC, and in his own campaign for circuit judge, should have been aware of the rules prohibiting judges from personally soliciting funds. (See 58 Ill. 2d R. 70(b).) We do not find that respondent's conduct was merely careless. (*Cf. Lane*, 127 Ill. 2d 90.) Furthermore, we are disturbed that respondent did not disclose his debtor-creditor relationship with Holzer to opposing counsel in the Schafer case or other cases his firm had before Holzer. See *Lane*, 127 Ill. 2d at 110 (respondent did not disclose debtor-creditor relationship he had with Holzer to opposing counsel); but see *In re Lidov* (1989), 129 Ill. 2d 424, 427 (respondent apparently disclosed to opposing counsel his loan to Holzer).

Several mitigating factors are present in this case. Respondent here, like the respondent in *Lidov*, got a promissory note for the loan, sought repayment from Holzer, and did in fact receive repayment. (*Lidov*, 129 Ill. 2d at 431.) Moreover, respondent cooperated fully throughout the disciplinary proceedings and had never previously come before this court in any disciplinary matter.

Finally, respondent contends that the Hearing Board erred in not admitting testimonial evidence from an offi-

cial of the Illinois State Board of Elections. The evidence would show, respondent argues, that attorneys in Illinois in the past commonly made campaign contributions directly to judges. An offer of proof containing this testimony is found within the record. This witness was basing his testimony on provisions of the Illinois Election Code, and not on the Code of Professional Responsibility. Moreover, an opinion as to whether a particular section of the Code has been violated is not an appropriate subject for expert testimony. (*In re Masters* (1982), 91 Ill. 2d 413, 425.) Regardless, we find nothing in the offer of proof which would alter our decision in this case.

For the reasons stated above, this court orders that respondent be suspended from the practice of law for a period of one year.

*Respondent suspended.*

CHIEF JUSTICE MORAN took no part in the consideration or decision of this case.