(No. 71702.—)

*In re* SAMUEL E. ALEXANDER, Attorney, Respondent.

*Opinion filed November 21, 1991.—Rehearing
denied February 3, 1992.*

BILANDIC, J., took no part.

Mary K. Foster, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Steven P. Handler and Lazar Pol Raynal, of McDermott, Will & Emery, of Chicago, for respondent.

JUSTICE FREEMAN delivered the opinion of the court:

On October 5, 1989, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a complaint charging that respondent, Samuel E. Alexander, violated various provisions of the Illinois Code of Professional Responsibility. 107 Ill. 2d R. 1—101 *et seq.* (superseded by Rules of Professional Conduct, 134 Ill. 2d R. 1.1 *et seq.*).

Specifically, the complaint alleged that on or about November 17, 1980, respondent directed the Bank of Ravenswood to issue a check, drawn on respondent's Keogh account, in the amount of $11,000, made payable, as a loan, to Judge Reginald J. Holzer. Judge Holzer received, endorsed, and collected the proceeds from this check. Subsequently, on January 21, 1983, Judge Holzer appointed respondent guardian *ad litem* in a case entitled Greenspan v. Schmitt (Cir. Ct. Cook Co.), No. 82—CH—9069. This appointment resulted in an award of fees to respondent. The complaint alleged that, as a result of his conduct, respondent violated Disciplinary Rules 1—102(a)(5) (107 Ill. 2d R. 1—102(a)(5)) (engaging in conduct prejudicial to the administration of justice) and 7—110(a) (107 Ill. 2d R. 7—110(a)) (giving or lending a thing of value to a judge).

In his answer, respondent admitted the fact of the loan and the appointment as guardian *ad litem*. However, he denied that his conduct constituted a violation of the Code. Further, in reliance on *In re Corboy* (1988), 124 Ill. 2d 29, respondent asserted, as an affirmative de-

fense, *inter alia*, a lack of knowledge of any wrongdoing, and that he had acted without guidance of any precedent or settled opinion.

A panel of the Hearing Board (Board) determined that there were no facts tending to show that respondent, at the time he made the loan, knew that he was violating the Code, or that he intended to receive any direct benefit as a result thereof. The Board noted, however, that the loan, which was made out of friendship, was intended to generate a 15% return.

The Board concluded that the evidence clearly and convincingly established that respondent had violated Rules 1—102(a)(5) and 7—110(a). Based upon its findings, the Board recommended that respondent be suspended from the practice of law for a period of six months.

Respondent filed timely exceptions to the findings and recommendation of the Hearing Board. (107 Ill. 2d R. 753(e)(1).) The Review Board found that the "transaction [was] more a situation where [respondent] was duped by a friend whose deceiving actions resulted in a financial loss to [respondent] and a gain to Holzer." It concluded that although respondent had no wrongful motive in making the loan to Holzer, he did in fact violate the rules charged in the complaint. The Review Board, with one member dissenting, concluded that the case was controlled by *In re Corboy* (1988), 124 Ill. 2d 29, and *In re Jones* (1988), 125 Ill. 2d 371, and that the complaint should be discharged.

This court granted the Administrator leave to file exceptions to the report and recommendations of the Review Board. 107 Ill. 2d R. 753(e)(6).

## RESPONDENT'S BACKGROUND

Respondent was admitted to practice law in Illinois in November 1952. Since the mid-1950s, respondent has practiced primarily in the real estate field. In addition to

his law practice, respondent is active in real estate investments and is an owner of Realty Equities Corporation and the River Grove Development Company. Respondent is also a part owner of Elmwood Cemetery Company. In the years prior to the filing of this ARDC complaint, the overall time respondent devoted to his legal practice, as contrasted to business activities, declined.

## FACTS

The parties have stipulated to the facts. Respondent and Judge Reginald Holzer lived in the same neighborhood, attended the same high school, and were boyhood friends. When respondent first started his law practice, Holzer, who had been a practicing attorney for two years, referred him some small matters.

In 1966 Holzer was elected a circuit court judge in Cook County. Following Holzer's elevation to the bench, respondent occasionally saw him socially and at luncheons.

On May 13, 1974, Holzer appointed respondent guardian *ad litem* in a case entitled Turley v. Illinois Bell Telephone Co. (Cir. Ct. Cook Co.), No. 73—L—1542. Respondent requested and received a fee of $1,355 for legal services he performed in that capacity. Prior to this appointment, respondent had not appeared before Judge Holzer.

In November 1980, Holzer called respondent to his chambers. Holzer informed respondent that he (Holzer) was behind in his condominium assessments and "desperately" needed money. He requested that respondent lend him $11,000. Respondent replied that he would try to obtain the money for Holzer.

Respondent arranged to make the loan to Holzer through respondent's Keogh account at the Bank of Ravenswood. On November 14, 1980, respondent autho-

rized the trustee of his Keogh account to lend $11,000, at a rate of 15% interest, to Holzer. The principal and interest on the loan were to be paid on or before May 1, 1981. At respondent's request, Holzer signed a promissory note; however, the loan was unsecured. Subsequent to making the loan, respondent, and/or members of his firm, continued to appear as counsel of record in cases pending in the circuit court of Cook County.

Holzer collected the proceeds of the $11,000 loan. He did not pay off the note on or prior to its due date, and at his request, payment on the note was extended to October 30, 1981. When the note came due, Holzer failed to pay, and, at Holzer's request, the note was extended to May 1, 1982. The record does not indicate to whom Holzer made this request.

On or about September 24, 1982, at respondent's direction, the bank sent a statement to Holzer indicating the payoff figure that was due on October 1, 1982. On or about October 11, 1982, Holzer paid the interest ($1,152.50) due on the note and $1,000 on the principal.

Some time after October 1982, respondent discussed repayment of the loan with Holzer. Holzer informed respondent that he was trying to find a buyer for his condominium and that when he had done so, he would repay the loan out of the sale proceeds. On November 1, 1982, pursuant to respondent's direction, the balance of the loan was renewed and a new promissory note for $10,000 at 12% interest was executed. In 1987, at respondent's direction, the note to Holzer was "written off," as uncollectible.

On October 18, 1982, during the pendency of the loan, a lawsuit, Greenspan v. Schmitt, was filed in the circuit court of Cook County. The trustees of an irrevocable trust filed a complaint for modification of the terms of the trust. The complaint requested that the court appoint successor trustees to succeed, if necessary,

the two current trustees. The lawsuit was assigned to Judge Holzer.

On January 26, 1983, Judge Holzer appointed respondent as guardian *ad litem* to represent two minors who were named defendants in the lawsuit. Initially, the parties appeared to be attempting to resolve the matter through pretrial negotiations. However, the case became contested when, in June 1984, the living settlors and adult beneficiaries of the trust filed a complaint alleging that the trustees breached their fiduciary duties as trustees. Thomas Sullivan entered the case as plaintiff's counsel. Neither respondent nor Holzer disclosed their debtor-creditor relationship.

On June 22, 1984, plaintiff's counsel moved for a change of venue. On June 27, 1984, Judge Holzer denied the motion, but, on his own motion, immediately recused himself. The case was reassigned to Judge Siegan. On April 17, 1985, pursuant to respondent's petition, Judge Siegan ordered that respondent be paid $13,684 for legal services and costs.

## SANCTIONS

The singular issue presented for our disposition is the appropriateness of a sanction. Although we accord great deference to the findings and recommendation of the Review Board, it is ultimately the responsibility of this court to determine an appropriate sanction. (*In re D'Angelo* (1988), 126 Ill. 2d 45, 52.) In so doing, we are mindful that the purpose of any disciplinary proceeding is not to punish the respondent, but rather to preserve the integrity of the legal profession and to protect the public interest. *In re Rothenberg* (1989), 127 Ill. 2d 139, 141.

## DISCUSSION

The Administrator contends that respondent's viola-

tion of the Code warrants a six-month suspension. Further, the Administrator maintains, only the imposition of a suspension will comport with this court's prior decisions.

Respondent places great reliance on this court's holdings in *In re Corboy* (1988), 124 Ill. 2d 29, and *In re Jones* (1988), 125 Ill. 2d 371. Based upon these cases, respondent takes the position that, absent knowledge of wrongdoing, this court has not imposed discipline for attorney loans to judges which were made in the 1980s. He maintains that this court's decisions establish that, on these facts, discharge is appropriate.

Proper resolution of this issue requires that we revisit the decisions in *Corboy* and *Jones* as well as some cases which followed. *Corboy* was a consolidated case involving charges of misconduct against six attorneys for having made a gift or a loan to a judge. Respondents Corboy, Maddux, Harte, and Madler each believed that the payment of their $1,000 was either a loan or a gift to the judge's mother. In that regard, the case is distinguishable from the present case.

The other two respondents in *Corboy*, Tuite and Banks, made their loans to the judge with full knowledge that the loans were to be used for the judge's own purpose. The factual circumstances surrounding respondents Tuite and Banks are most analogous to the present case. Thus, in our discussion we will examine the *Corboy* decision as it relates to those two respondents.

The common issue in *Corboy* was what conduct constitutes giving or lending a thing of value to a judge so that such conduct falls within the proscription of Rule 7—110(a). This court held, for the first time, that Rule 7—110(a) must be read in conjunction with the Code of Judicial Conduct. The court stated that if a lawyer or one with whom he is associated in the practice of law is likely to have a matter before a court, he should not

make a gift to any judge of that court, unless the gift falls within one of the exceptions listed in paragraphs (a) or (b) of Rule 65(C)(4) of the Code of Judicial Conduct; or unless it falls within the exception of Rule 7—110(a), which permits a lawyer to make a contribution to the campaign fund of a candidate for a judicial position. *Corboy,* 124 Ill. 2d at 44-45.

The court held that when respondents Tuite and Banks made the loans to Judge LeFevour, they were "sailing in uncharted waters." (*Corboy,* 124 Ill. 2d at 49.) The court noted that neither respondent was aware of the prohibition of Rule 7—110(a), and certainly not of the construction this court was then placing on the rule. Neither respondent practiced before Judge LeFevour, although both respondents had cases pending in the district of the circuit court over which Judge LeFevour presided; and there was no improper motive in making the loans.

The court concluded that even though the respondents' conduct constituted a violation of Rule 7—110(a) under the new construction, such conduct would not constitute a violation under a more liberal construction of what constitutes "practice before the judge" under Rule 65(C)(4)(c) (107 Ill. 2d R. 65(C)(4)(c)). On this basis, the respondents were discharged.

Similarly, in *In re Jones* (1988), 125 Ill. 2d 371, another attorney-judge loan case, this court declined to impose a sanction. In reaching that result, the court noted that neither the respondent nor any member of his firm ever practiced before Judge Holzer; there was no improper motive on the part of the respondent in making the loan; and prior to the decision in *Corboy,* the scope of Rule 7—110(a) had not been authoritatively construed.

Significantly, since this court's decisions in *Corboy* and *Jones,* other attorneys who have made loans to judges have not escaped sanction. We will examine sev-

eral of those cases to determine the distinguishing factors. In our attempt to consider those cases which are most analogous to this case, we have excluded, from consideration, those post-*Corboy/Jones* cases wherein there was a determination that the loans were made for improper purposes. See, *e.g., In re Ketchum* (1988), 124 Ill. 2d 50; *In re D'Angelo* (1988), 126 Ill. 2d 45.

In *In re Lidov* (1989), 129 Ill. 2d 424, the respondent was suspended from practice for six months for having made a $4,000 cash loan directly to Judge Holzer. Even though the loan had been made for campaign purposes, and Holzer had given the respondent a promissory note, the court found that the respondent had, nonetheless, violated Rule 7—110(a) by having given the money directly to the judge. Further, in determining the appropriate sanction, the court noted that less than one year later, while the loan was outstanding, two of the respondent's cases were randomly assigned to Holzer, but were settled before proceeding to trial. Despite the fact that both cases were settled, the court found that the respondent's conduct was of the character which Rule 7—110(a) was intended to prevent.

In another case, *In re Rothenberg* (1989), 127 Ill. 2d 139, 140, the respondent made seven loans to Judge Holzer between May 1978 and March 1984. During that period, the respondent appeared as the attorney of record in one case being litigated before Holzer and he was appointed by Holzer in eight cases to serve as guardian *ad litem*. The respondent testified that he was unaware of a prohibition against loans by lawyers to judges. (*Rothenberg,* 127 Ill. 2d at 141.) The court imposed a sanction of one-year suspension.

In *In re Lunardi* (1989), 127 Ill. 2d 413, the respondent argued that it would be unfair to discipline him in light of this court's holding in *Corboy*. We rejected his argument, noting that, unlike respondents Banks and

Tuite in *Corboy*, respondent Lunardi represented a client before Judge Witt during the pendency of their loan arrangement. (*Lunardi*, 127 Ill. 2d at 429.) We deemed suspension an appropriate sanction.

Respondent Chatz arranged for a short-term loan to Judge Holzer based upon his belief that the judge needed money to pay some campaign debts. (*In re Chatz* (1989), 131 Ill. 2d 499, 503.) Between 1978 and 1982, the respondent's law firm had 12 cases pending before Judge Holzer. In July of 1978, the respondent petitioned for a receiver's fee in Schafer v. Three Star Enterprises (Cir. Ct. Cook Co.), No. 78—CH—574, a case presided over by Holzer. Two days after the respondent contacted Holzer regarding satisfaction of the $5,000 loan, Holzer ordered the plaintiff in the Schafer case to pay the respondent $2,650 in fees, plus expenses. Respondent Chatz never revealed to opposing counsel in that case, or any other case his firm had before Holzer, his debtor-creditor relationship with the judge. *Chatz*, 131 Ill. 2d at 504.

Finally, in *In re Weinstein* (1989), 131 Ill. 2d 261, the respondent made seven loans to Judge Holzer. During the pendency of six of the loans, the respondent had not appeared, and it was unlikely that he would appear, before Holzer in any litigation. However, during the pendency of the seventh loan, the respondent did appear before Holzer. This court held that, as for the first six loans, there was no violation of the Code; however, for the seventh loan, the Code had been violated. Thus, the court sanctioned the respondent with censure.

Respondent here maintains that, not only does this case parallel *Corboy* and *Jones*, it lacks the aggravating factors which resulted in sanctions in the cases upon which the Administrator relies. He attempts to distinguish these cases, and maintains that this court's decisions establish that he should be discharged without sanctions.

Specifically, respondent points out that: he, unlike the respondents in *Weinstein*, 131 Ill. 2d 261, and *Rothenberg*, 127 Ill. 2d 139, did not have a case pending before Judge Holzer at the time he made his loan to the judge; he, unlike the respondent in *Chatz*, 131 Ill. 2d 499, did not know that the loan was improper; he, unlike the respondent in *Lidov*, 129 Ill. 2d 424, did not make his loan from cash in a safety deposit box and had not previously tried a contested case before the judge prior to making the loan; and he, unlike the respondent in *Lunardi*, 127 Ill. 2d 413, was not convicted of a crime.

We are not persuaded that these distinctions are sufficient to support a result where no sanction is imposed. First, the fact that the respondent had no cases before Holzer at the time he made the loan does not serve to excuse his later conduct in accepting the guardian *ad litem* appointment during the pendency of the loan.

Second, respondent concedes that lack of knowledge of the impropriety of the loan is no excuse. Moreover, in *Rothenberg*, 127 Ill. 2d 139, the respondent claimed a lack of knowledge of the rule. He was sanctioned nonetheless.

As an aside, we note that respondent testified that at the time of the Greenspan case, he failed to disclose his debtor-creditor relationship because: (1) the matter was uncontested, and (2) the matter was transferred to another judge. We find the fact that respondent even had reasons for not disclosing, though plausible, to be inconsistent with a lack of awareness that such conduct was prohibited.

Third, the decision to impose sanctions in *Lidov*, 129 Ill. 2d 424, did not turn on the origin or type of payment of the loan, but rather on the method in which the respondent contributed money to the judge's campaign fund. It is of no moment that the loan payment here was by check as opposed to cash. Finally, the respondent in *Lunardi*, 127 Ill. 2d 413, was not sanctioned solely on the

basis of his criminal conviction but, rather, on the basis of the conviction and his loan to the judge.

Neither are we swayed by the fact that respondent had not previously tried a contested matter before Judge Holzer or that the Greenspan case was an uncontested matter. The posture of the matter before the judge is not, nor should it be, determinative on the issue of whether a respondent's conduct is violative of the Code. Rather, it is the appearance of impropriety and the fact that the integrity of the judiciary is impugned as a result of respondent's conduct which give rise to a violation.

Respondent further contends that the main aggravating factor upon which the Administrator relies in seeking sanctions is respondent's failure to disclose the loan to the parties in the Greenspan case. He maintains, however, that in asserting this claim, the Administrator "paints the facts with the benefit of 20/20 hindsight, not in terms of what was known to respondent at the time of the events in question." He maintains that if his conduct is viewed with foresight, rather than hindsight, his actions in the Greenspan case do not provide any basis for imposing sanctions.

Respondent posits the following arguments in support of his contention. First, he argues that at the time he made the loan, he had no expectation of appearing before Judge Holzer and that the loan was not made for any improper purpose. Second, there is no evidence that anyone was prejudiced by his conduct or that he did anything, other than an "excellent job," as guardian *ad litem* in the Greenspan case. Third, respondent argues, at the point when the Greenspan matter became unexpectedly contested, the case was immediately transferred to Judge Siegan.

We do not dispute these facts as respondent has stated them. However, that it was not foreseeable that respondent would appear before Judge Holzer does not negate the

fact that he did, in fact, appear before him during the pendency of the loan. Lack of foreseeability does not excuse his conduct. (See *In re Weinstein* (1989), 131 Ill. 2d 261.) Second, as the purpose of discipline is to safeguard the public as well as to maintain the integrity of the legal profession (*In re Rolley* (1988), 121 Ill. 2d 222, 235), the fact that no one was prejudiced is not dispositive. Third, we note that even though the case was transferred to another judge, it was not transferred at respondent's behest. Rather, it was opposing counsel's, and ultimately Judge Holzer's, action which resulted in the transfer.

We do not believe that there exist, in this case, such significant distinguishing factors as would permit respondent to escape sanction. Respondent, unlike the respondents in *Corboy* and *Jones*, in fact, appeared before Holzer in the Greenspan case during the pendency of his loan agreement, and continued to appear as counsel of record in cases pending in the circuit court of Cook County. It is this factor upon which this court has generally relied as the most significant in distinguishing attorney-judge loan cases from *Corboy* and *Jones*.

We believe that the facts in this case, while not completely analogous, most resemble those in *Weinstein*, 131 Ill. 2d 261, and *Lidov*, 129 Ill. 2d 424. Respondent Weinstein was not a trial attorney and his practice never included trial work. His practice was concentrated in the areas of corporate, probate and real estate law. The respondent had never appeared before Judge Holzer prior to 1978, and he had no cases pending in the circuit court in 1977 and 1978. Thus, it was entirely unforeseeable that the respondent would ever appear before Holzer. *Weinstein*, 131 Ill. 2d at 267.

In 1979 and 1980 respondent Weinstein provided *pro bono* representation in a case which had been randomly assigned to Judge Holzer. During the pendency of the case, the respondent made a seventh loan to the judge. (We note

that the sequence of events as stated in the fact section of the *Weinstein* opinion regarding when the seventh loan was made conflicts with the sequence as it is stated in the analysis portion of the opinion.) The nature of the case was not typical of the respondent's practice and he only agreed to handle it out of friendship to the party. The case was settled before Holzer made any rulings and before the respondent appeared before him. *Weinstein,* 131 Ill. 2d at 268.

In determining an appropriate sanction, the court considered, in mitigation, *inter alia,* that Holzer fully repaid the principal on each of the loans. (*Weinstein,* 131 Ill. 2d at 271.) This court held that although the *pro bono* case was settled before Holzer made any rulings, the respondent's conduct in arranging the loan while the case was still pending and his failure to inform opposing counsel of the loan transaction compromised the fairness and impartiality of the tribunal and prejudiced the administration of justice. *Weinstein,* 131 Ill. 2d at 269.

Respondent Weinstein, relying on *Corboy* and *Jones,* argued that he should be discharged because he acted without the guidance of precedent or settled opinion and because he harbored no improper motive. This court rejected the respondent's arguments, because the *pro bono* case was already assigned to Holzer when the respondent arranged the loan for him. Further, the court noted, common sense and sound judgment should have guided the respondent in his dealings with Holzer. (*Weinstein,* 131 Ill. 2d at 270.) The court imposed a sanction of censure.

Similarly, here we believe that respondent should have been guided by common sense and sound judgment. At the time he accepted the appointment from Judge Holzer, the loan was still outstanding and Judge Holzer, in fact, ruled on plaintiff's counsel's motion for transfer. The November 1982 renegotiation/renewal of the promissory note and reduced interest rate, subsequently followed by the January

1983 guardian *ad litem* appointment, and respondent's continued appearance, as counsel of record, in cases pending in the circuit court, are all facts which militate against respondent's discharge.

Further, in *Lidov*, as here, Holzer gave the respondent a promissory note for the loan. Also, like respondent in this case, respondent Lidov persistently called Holzer seeking repayment of the loan, and shortly thereafter, Holzer began making payments to the respondent. Similar to respondent here, respondent Lidov rarely appeared before Holzer. In fact, his only trial before Holzer occurred five years before the loan was made. During the pendency of the loan, two of the respondent's cases, which were randomly assigned to Holzer for pretrial, were settled after the pretrial conferences. Here, once the Greenspan case became contested, it was transferred. Finally, unlike respondent here, respondent Lidov, while uncertain, testified that he believed that he disclosed his debtor-creditor relationship to opposing counsel in both those cases. Yet, this court imposed upon respondent Lidov a six-month suspension.

In light of *Weinstein* and *Lidov*, we are hardpressed to conclude that no sanction should be imposed on this respondent. Thus, in consideration of our prior decisions, and based upon these facts, we find a six-month suspension to be an appropriate sanction. In so finding, we are mindful of respondent's repeated attempts to have the loan repaid, his lack of any improper motive, and his prior unblemished record, as well as his reputation for honesty and integrity among members of the bar.

*Respondent suspended.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.