(No. 67741.—

*In re* ALVIN I. WEINSTEIN, Attorney, Respondent.

*Opinion filed September 27, 1989.*

Mary K. Foster, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Thomas P. Sullivan and Jeffrey D. Colman, of Jenner & Block, of Chicago, for respondent.

CHIEF JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a seven-count complaint alleging that the respondent, Alvin I. Weinstein, arranged seven $5,000 loans for then Judge Reginald Holzer in violation of Disciplinary Rule (DR) 7—110(A) (giving or lending a thing of value to a judge) and DR 1—102(A)(5) (engaging in conduct prejudicial to the administration of justice) of the Illinois Code of Professional Responsibility (1970) (Code). The Hearing Board found that the respondent violated DR 7—110(A) and recommended that he be censured. The Review Board found that the respondent violated DR 7—110(A) and DR 1—102(A)(5) and recommended that he be suspended from the practice of law for a period of six months. The respondent filed exceptions to the report and recommendation of the Review Board. 107 Ill. 2d R. 753(e)(5).

At issue is whether the respondent engaged in conduct violative of DR 7—110(A) and DR 1—102(A)(5) and, if so, whether the respondent should be sanctioned.

The facts are not in dispute. The respondent was admitted to the bar of this State in 1939. He is a sole practitioner and his practice is concentrated in the areas of corporate, probate and real estate law. The respondent first met Holzer in the late 1940s or early 1950s at a function at Temple Beth El in Chicago, Illinois, and they have since enjoyed a friendly, social relationship.

In early 1977, Holzer approached the respondent and asked him to arrange a loan. In February 1977, the respondent arranged a $5,000 loan for Holzer at the American National Bank. Although the respondent signed a note on the loan and was personally responsible for its repayment, Holzer fully repaid the principal and interest due on the loan.

The respondent arranged additional $5,000 loans for Holzer in May 1977, January 1978, April 1978, August 1978, and December 1978. Each loan was arranged in the same manner as the original loan. With the exception of the April 1978 loan, Holzer fully repaid the principal and interest due on each loan. With respect to the April 1978 loan, Holzer fully repaid the principal but failed to pay the interest. The respondent paid the $87.75 interest charge, then asked Holzer to reimburse him. Holzer fully reimbursed the respondent.

In May 1980, Holzer telephoned the respondent and in a hysterical tone of voice asked him to arrange another loan. The respondent informed Holzer that he was unable to make the necessary arrangements because he was on his way to the airport, but would ask a friend to do so. The respondent contacted Nathan Stein, his business partner, who arranged a $5,000 loan for Holzer at the Glencoe National Bank. Holzer fully repaid the principal and interest due on the loan.

During 1979 and 1980, while the final loan was still outstanding, the respondent represented the Damato family, who were plaintiffs in an action seeking specific performance of a real estate contract. As a personal friend of the Damato family, the respondent agreed to represent them *pro bono*. The case was assigned randomly to Holzer. The respondent informed opposing counsel that he was a friend of Holzer, that he believed the matter could be settled, and that if it could not be settled he would refer it to another attorney and would

move for a change of venue. The respondent did not inform opposing counsel of the loan transactions with Holzer. Before Holzer made any rulings and before the respondent appeared before him on the case, the parties agreed to a settlement. Holzer then met with the respondent and opposing counsel to verify that the settlement was free and voluntary. With the exception of the *pro bono* case, the respondent had never appeared before Holzer.

Both the Hearing and Review Boards found that the respondent did not attempt to curry favor with Holzer or to influence his decision in the *pro bono* case. The Administrator agrees that the respondent did not act with an improper motive.

The first issue presented for review is whether the respondent gave or lent a thing of value to a judge in violation of DR 7—110(A). In *In re Corboy* (1988), 124 Ill. 2d 29, 41, this court held that DR 7—110(A) must be read in conjunction with Rule 65(C)(4) of the Code of Judicial Conduct, which provides:

"(4) Neither a judge nor a member of his family residing in his household should accept a gift, bequest, favor, or loan from anyone except as follows:

(a) a judge may accept a gift incident to a public testimonial to him; books supplied by publishers on a complimentary basis for official use; or an invitation to the judge and his spouse to attend a bar-related function or activity devoted to the improvement of the law, the legal system, or the administration of justice;

(b) a judge or a member of his family residing in his household may accept ordinary social hospitality; a bequest, favor, or loan from a relative; a wedding or engagement gift ***;

(c) a judge or a member of his family residing in his household may accept any other gift, bequest, favor, or loan, only if the donor is not a party or other

person whose interests have come or are likely to come before him, including lawyers who practice or have practiced before the judge." 107 Ill. 2d R. 65(C)(4).

The respondent argues that the six loans he arranged for Holzer in 1977 and 1978 fall within the purview of subsection (c), because at that time it was not "likely" that he would ever appear before Holzer. The respondent concedes that the seventh loan he arranged for Holzer in May 1980 was violative of DR 7—110(A), because at that time he appeared before Holzer in the *pro bono* case. The Administrator argues that all seven loans were violative of DR 7—110(A). We agree with the respondent.

When the respondent arranged the first six loans for Holzer in 1977 and 1978, it was not "likely" that he would ever appear before him. The respondent had never appeared before Holzer prior to 1978, and he had no cases pending in the circuit court in 1977 and 1978. The record does not reveal how many appearances the respondent had filed in the circuit court since he was admitted to the bar in 1939, but the record indicates that the respondent had filed very few appearances. The respondent was not a trial attorney and his practice never included trial work. His practice was concentrated in the areas of corporate, probate and real estate law, and if a matter were to proceed to trial, the respondent would refer it to another attorney. Furthermore, the advanced stage of the respondent's professional career rendered it improbable that he would expand his practice to include trial work. Under these circumstances, it was entirely unforeseeable that the respondent would ever appear before Holzer.

After 1978, the only appearance that the respondent filed in the circuit court was the *pro bono* case in 1980. The fact that the *pro bono* case was assigned to Holzer does not negate our finding that it was unlikely in 1977

and 1978 that the respondent would ever appear before Holzer. The circumstances surrounding that case were unique. The respondent, as a friend, agreed to represent the Damato family *pro bono*. The nature of the case was not typical of the respondent's practice and he only agreed to handle it out of friendship. The case was assigned randomly to Holzer. The respondent informed opposing counsel that he was a friend of Holzer and that if the parties could not reach a settlement, he would refer the matter to another attorney and would move for a change of venue. The case was settled before Holzer made any rulings and before the respondent appeared before him. The fact that the *pro bono* case was the *only* case the respondent had in the circuit court after 1978. and the fact that the case was *not typical* of the respondent's practice reinforce our finding that it was unlikely in 1977 and 1978 that he would ever appear before Holzer.

Although we find it unlikely that in 1977 and 1978 the respondent would ever appear before Holzer, we do not today diminish our holding in *Corboy*. In *Corboy*, we noted that the exception contained in Rule 65(C)(4)(c) is not to be liberally construed in favor of the donor. (*Corboy*, 124 Ill. 2d at 45.) Furthermore, as we stated in *Corboy*:

> "[I]f a lawyer or one with whom he is associated \*\*\* is likely to have a matter before a court (circuit, appellate or supreme), he should not make a gift to *any* judge of that court, unless the gift falls within one of the exceptions listed in exception (a) or (b) of Rule 65(C)(4) \*\*\* or unless it falls within the exception of Rule 7—110 \*\*\*." (Emphasis added.) (*Corboy*, 124 Ill. 2d at 44-45.)

The distinction between this case and *Corboy* is our finding that the respondent here never engaged in trial work and filed almost no appearances in the circuit court in

over 40 years of practice, until the time he made the seventh loan, in May 1980, to Holzer.

The seventh loan that the respondent arranged for Holzer was violative of DR 7—110(A). At the time the respondent arranged the loan, the *pro bono* case was already assigned to Holzer. The respondent concedes that this loan was violative of the rule.

The next issue presented for review is whether the respondent engaged in conduct prejudicial to the administration of justice in violation of DR 1—102(A)(5). As we find that the first six loans the respondent arranged in 1977 and 1978 were not violative of DR 7—110(A), the respondent's conduct in arranging these loans was not violative of DR 1—102(A)(5).

The respondent's conduct in arranging the seventh loan in May 1980 was prejudicial to the administration of justice in violation of DR 1—102(A)(5). If the administration of justice means anything, it means a fair and impartial tribunal. (*In re Powell* (1988), 126 Ill. 2d 15, 27.) An attorney who performs a favor for a judge before whom he is likely to appear compromises the fairness and impartiality of the tribunal and prejudices the administration of justice. (*Powell*, 126 Ill. 2d at 27.) Although the *pro bono* case was settled before Holzer made any rulings, the respondent's conduct in arranging the loan while the case was still pending and his failure to inform opposing counsel of the loan transaction compromised the fairness and impartiality of the tribunal and prejudiced the administration of justice.

The final issue presented for review is whether the respondent should be sanctioned. The respondent initially argues that he should be discharged because he acted without the guidance of precedent or settled opinion (see *In re Corboy* (1988), 124 Ill. 2d 29, 45), and because he harbored no improper motive (see *In re Jones* (1988), 125 Ill. 2d 371, 381). We do not agree that the re-

spondent should be discharged. The first six loans that the respondent arranged for Holzer were not violative of any disciplinary rule, but the seventh loan was violative of DR 7—110(A) and DR 1—102(A)(5). The *pro bono* case was already assigned to Holzer when the respondent arranged the loan for him. Moreover, the respondent did not inform opposing counsel of the loan transaction. Common sense and sound judgment should have guided the respondent in his dealings with Holzer. The inappropriate timing and surreptitious nature of the loan are inconsistent with discharge.

The respondent alternatively argues that any sanction should be limited to censure. In support thereof, the respondent highlights the substantial evidence in mitigation as opposed to the limited evidence in aggravation.

The Administrator argues that the respondent should be suspended from the practice of law for a period of six months. In support thereof, the Administrator emphasizes that the respondent had arranged seven loans for Holzer between 1977 and 1980, and that the respondent had a case before Holzer while the final loan was still outstanding. We note that the Administrator, in making his recommendation, presupposes that all seven loans were violative of DR 7—110(A). As we have concluded that the first six loans were not violative of any disciplinary rule, we will not consider the circumstances surrounding these loans in determining the appropriate sanction.

The purpose of disciplinary proceedings is to safeguard the public and maintain the integrity of the legal profession. (*In re Rolley* (1988), 121 Ill. 2d 222, 235.) Although we strive for consistency in the sanctions ultimately imposed, we recognize that each case of attorney misconduct is unique and requires an independent evaluation of its relevant circumstances. (*In re Cheronis* (1986), 114 Ill. 2d 527, 535.) In determining the appro-

priate sanction, we will consider the relevant factors in aggravation and mitigation. *In re Lidov* (1989), 129 Ill. 2d 424.

In aggravation, the Administrator reiterates that the respondent arranged the seventh loan after the *pro bono* case was assigned to Holzer and he did not inform opposing counsel of the loan transaction. The presence of a pending case is an aggravating factor which may be taken into consideration (*In re Powell* (1988), 126 Ill. 2d 15, 32), because it threatens the integrity of the legal profession and creates an aura of impropriety.

In mitigation, the respondent asserts that he did not act with an improper or dishonest motive. The respondent and Holzer were social friends since the late 1940s or early 1950s, and the respondent's conduct in arranging the loans was motivated by friendship and compassion. The only time the respondent had ever appeared before Holzer was in the *pro bono* case, which was settled before Holzer made any rulings. Both the Hearing and Review Boards found that under these circumstances the respondent did not attempt to curry favor with Holzer or to influence his decision in the *pro bono* case. The Administrator agrees that the respondent did not act with an improper motive. The lack of an improper motive is a mitigating factor which may be taken into consideration. See *In re Corboy* (1988), 124 Ill. 2d 29, 39 (no improper motive); *In re Ketchum* (1988), 124 Ill. 2d 50, 59 (respondent attempted to curry favor with the judge because it was likely he would appear before him); *In re Karzov* (1988), 126 Ill. 2d 33, 43-44 (respondent attempted to influence the judge's decision in the one case he had pending before him).

The respondent also emphasizes that Holzer fully repaid the principal on each of the loans and fully paid the interest due on six of the loans, and although the respondent paid the interest charge on the April 1978

loan, Holzer fully reimbursed him. The repayment of a loan is not relevant in determining whether there has been a violation of DR 7—110(A), but it is a mitigating factor which may be taken into consideration. See *In re Rothenberg* (1989), 127 Ill. 2d 139 (respondent lent the judge $8,700 interest-free and the judge repaid all but $500); *In re Lidov* (1989), 129 Ill. 2d 424 (respondent lent the judge $4,000 interest-free and the judge repaid the entire amount).

The respondent also emphasizes that when he arranged the loans, he was unaware of the rule prohibiting a lawyer from giving or lending a thing of value to a judge. The respondent's lack of knowledge does not excuse his conduct, as it is the " 'paramount obligation of each member of the bar to study the Code of Professional Responsibility and abide by its terms and principles.' " (*In re Holz* (1988), 125 Ill. 2d 546, 560, quoting *In re Cheronis* (1986), 114 Ill. 2d 527, 535.) However, we note that once the court adopted the Code of Professional Responsibility in June 1980 to replace the previous code, the respondent promptly read the rules and decided against arranging additional loans.

Finally, we note that the respondent has an unblemished record as a lawyer since 1939 and has been active in charitable and legal organizations since that time. As an example of the respondent's exemplary character, he cooperated fully with the Federal investigation of Holzer without requesting a grant of immunity.

In light of the totality of the evidence, and particularly the extensive mitigating evidence, we deem the appropriate sanction to be censure.

*Respondent censured.*