(No. 67739.—

*In re* BERNARD S. NEISTEIN, Attorney, Respondent.—*In re* IRVIN F. RICHMAN, Attorney, Respondent.

*Opinion filed October 25, 1989.—Rehearing denied December 4, 1989.*

WARD, CLARK and STAMOS, JJ., took no part.

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Bernard S. Neistein, *pro se,* Patrick A. Tuite and Cynthia Giacchetti, of Tuite, Mejia & Giacchetti, and Neistein, Richman, Hauslinger, Young & Rosen, Ltd., all of Chicago, for respondents.

JUSTICE CALVO delivered the opinion of the court:

On September 10, 1986, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a complaint charging respondents with violation of Disciplinary Rules (DR) 7—110(A), 1—102(A)(2), 1—102(A)(4), and 1—102(A)(5), and Canon 9 of the Illinois Code of Professional Responsibility (1977) (the Code). The Hearing Board filed a report finding both respondents had violated DR 7—110(A) by making payments on Judge Holzer's loan and recommending the suspension of both respondents from the practice of law for a period of 30 months. The Review Board agreed with the Hearing Board.

Respondents filed their exceptions to the recommendation of the Hearing Board on January 20, 1988. The motion of respondents to have their exceptions to the

Hearing Board report and recommendations stand as their exceptions to the report and recommendations of the Review Board was allowed September 28, 1988. The Administrator also filed exceptions to the findings of both the Hearing Board and the Review Board.

The issues presented for review are whether the conduct of respondents violated DR 7—110(A) of the Code and, if so, what sanction, if any, should be imposed. Respondents were licensed to practice law in Illinois in 1937. After his admission, Bernard S. Neistein entered general sole practice in Chicago. He joined the Army in 1942 and served in the European Theatre in World War II. He resumed his practice after the war and established a partnership with respondent Irvin F. Richman in 1956. They have practiced law together since then.

Respondent Neistein is a former Illinois State Senator and Representative. During his tenure, he helped pass the Judicial Reform Bill. He also served as a master in chancery in the early 1960s.

Respondent Richman worked with several lawyers in private practice before he joined the United States Army and was stationed in Europe and North Africa. He worked for individual lawyers after the war until about 1950. He then joined a prominent Chicago law firm and was there until he joined respondent Neistein in 1956. Respondents' firm had grown to include approximately 15 attorneys by 1980.

Neistein's role in the firm has been to attract business, while Richman's role has been that of managing partner. He also considers himself as a transactional lawyer handling matters involving real estate, business law and corporations. The firm's business has concentrated in those areas, plus banking. The firm was involved in frequent litigation in the chancery division of the circuit court of Cook County due to the nature of the practice.

In 1980, the respondents and their firm owned 25% of the stock of Republic Bank of Chicago, 6501 South Pulaski, Chicago. Richman was a director of the bank commencing in the early 1970s and was given the task of negotiating a sale of the bank in 1977. He began negotiating with a prospective purchaser in April 1983 resulting in the sale of the bank on or about October 31, 1984. The respondents realized a profit of $325,000 or $345,000 each.

Neistein first met Reginald J. Holzer during the 1950s and would see him at the Bismarck Hotel coffee shop in the mornings and exchange greetings. Neistein never became a social friend and neither he nor Richman ever appeared in court before Holzer. Their partner, Harry Young, was responsible for litigation and appeared before Holzer and the other judges in the chancery division. Between 1978 and 1982, the firm appeared as counsel of record before Holzer in 14 cases.

At the end of 1979 or early in 1980, Neistein met Holzer in the Civic Center and Holzer said he would phone him soon, as he wanted to talk. Holzer phoned Neistein and invited him to his chambers a week or two later. Holzer related he was not "liquid" and needed a $10,000 loan. Neistein said he would get back to him. Neistein went to the office and discussed the matter with Richman. They decided to have Holzer apply to the Republic Bank for a loan. Richman phoned Marvin E. Schatzman, president and chief executive officer of the Republic Bank, asking him to send the necessary paperwork to Holzer for a $10,000 loan. The bank sent the papers to Holzer for completion. After reviewing Holzer's net worth statement, Schatzman approved the loan and sent a note to Holzer for execution. Holzer phoned Neistein and said, "I've got a note." Neistein walked over, met Holzer and took an envelope from Holzer containing the note. Neistein placed the envelope

on Richman's desk, who opened it and noted Holzer had signed it and listed his home address. Richman crossed out the home address and substituted "Richard J. Daley Civic Center" because businessmen usually like banking documents sent to their office. He then mailed the note to the bank on or about March 28, 1980.

Holzer failed to make the interest payment due June 28, 1980. Richman saw the delinquency on the bank's monthly report and ran to Neistein's office saying, "Hey, look at this. Holzer is already in default on that loan. You better get over there and tell him to make his payment." Neistein told the judge he had not made the payment. Holzer replied, "Well, I'm still not liquid and I'm broke. Make the payment." Holzer then told Neistein to pay the principal and interest. Neistein did not respond and returned to his office. He and Richman decided to make the payment, noting, "What we decided to do was we would preserve the integrity of the bank and we decided that we would make the payment."

Thereafter, each respondent contributed half the money to pay interest of $335.07 and principal of $500 and purchased two money orders at the American National Bank, located in the same building as their office. Richman took the money orders and printed "Pay to the order of Republic Bank" on each as well as the name Reginald Holzer. He then printed Holzer's loan number on them and mailed the checks to the Republic Bank.

Later, Holzer called Neistein to his chambers and said, "I got a notice from the bank, a white slip, take care of it." Neistein returned to the office and talked to Richman. They made the payment, following the same procedure as before and continued to do so through June 23, 1981, paying a total of $8,770.67. Apparently, Holzer made the remaining payments himself until the loan was paid. Respondents claim Holzer stopped asking them to make payments after June 23, 1981.

As a result of these dealings with Holzer, the Administrator filed a complaint against respondents, charging them with the following misconduct:

(1) giving or lending a thing of value to a judge in violation of DR 7—110(A) of the Illinois Code of Professional Responsibility (1977);

(2) circumventing a disciplinary rule through the actions of another in violation of DR 1—102(A)(2) of the Illinois Code of Professional Responsibility (1977);

(3) engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of DR 1—102(A)(4) of the Illinois Code of Professional Responsibility (1977);

(4) engaging in conduct that is prejudicial to the administration of justice in violation of DR 1—102(A)(5) of the Illinois Code of Professional Responsibility (1977); and

(5) failing to avoid even the appearance of professional impropriety in violation of Canon 9 of the Illinois Code of Professional Responsibility (1977).

The Hearing Board found respondents violated DR 7—110(A) by making payments on Judge Holzer's loan. The Board found:

(1) "Respondents contend that their elaborate clandestine operation to keep this transaction secret was to prevent the bank from finding out. While they may have done it partly for this reason, they also did it because they knew it was wrong. They are both intelligent, sophisticated street-wise attorneys with almost 100 years of legal experience between them yet they would have us believe that neither of them ever considered that Judge Holzer would treat their firm differently because of these payments. Worse than that, they never bothered to check what cases, if any, their firm had before Holzer. We simply cannot believe they were so naive."

(2) "[Respondents] compounded their error by falsifying the checks, thereby deceiving the Bank, its stockholders and the public."

(3) "Respondents argue they did this because a collection suit against a judge would be the worst thing that could happen to the Bank. We are not convinced of this but even if it were true, it does not provide an excuse for making his loan payments."

(4) "We are aware that Respondents have a long unblemished record of legal service to the community. However, the violations before us are very serious. In view of all the circumstances we recommend that both Respondents be suspended from the practice of law for a period of 30 months."

The Review Board concurred with the findings of fact and conclusions of law of the Hearing Board and also recommended the respondents be suspended from the practice of law for a period of 30 months.

While we give due deference to the Board's findings as to the appropriate sanction, as well as to the finding of the violation itself, we note that final responsibility for making these determinations rests with this court. (*In re D'Angelo* (1988), 126 Ill. 2d 45, 52; *In re Harris* (1982), 93 Ill. 2d 285, 291-92.) The purpose of discipline is not to punish the attorney, but to maintain the integrity of the profession and to protect the public. (*In re Pappas* (1982), 92 Ill. 2d 243, 247; *In re Neff* (1980), 83 Ill. 2d 20, 25.) Although this court strives for uniformity in disciplinary actions (*In re Saladino* (1978), 71 Ill. 2d 263, 275; *In re Lane* (1989), 127 Ill. 2d 90, 108), each case is unique and must be evaluated on the facts presented (*D'Angelo*, 126 Ill. 2d at 53; *In re Leonard* (1976), 64 Ill. 2d 398, 404).

Additional facts which developed were as follows:

(1) At no time were opposing counsel, in any firm case before Holzer, ever informed of respondents' payments for the judge.

(2) At no time was Judge Holzer's recusal sought in any firm cases pending before him.

(3) Respondents never received any repayment from Holzer.

(4) Respondents never brought Holzer's conduct to the attention of the United States Attorney, Cook County State's Attorney, or the Judicial Inquiry Board or the ARDC.

Both respondents testified before the Federal grand jury relative to a criminal investigation of Judge Holzer after receiving immunity from the government. They also testified in Holzer's trial. Holzer was found guilty February 18, 1986, and sentenced to prison. However, he was found not guilty of extortion as to respondents.

In considering the evidence in this case and reasonable inferences to be drawn therefrom, we feel the Hearing Board's findings, with concurrence of the Review Board, that respondents violated DR 7—110(A) to be supported by clear and convincing evidence.

Having found respondents violated DR 7—110(A), we must next decide the appropriate sanction.

It is obvious respondents' payments on Judge Holzer's loan called into question the independence and impartiality of a judge before whom members of their firm regularly appeared. The making of a loan to a sitting judge (or making payments on his loan) erodes and damages the public confidence in the bar, the judiciary and the entire legal system. See *In re Ketchum* (1988), 124 Ill. 2d 50.

Two factors aggravate respondents' misconduct, as said factors similarly aggravated the violation of DR 7—110(A) found in *In re Lane* (1989), 127 Ill. 2d 90. First, because of the nature of their law practice, respondents knew their firm's cases were regularly heard in the chancery division of the circuit court of Cook County where Judge Holzer sat. Even if respondents were argu-

ably unaware the firm had cases before Holzer, they should have realized their firm would have cases before him in the future. Therefore, it was incumbent upon respondents to be particularly careful in their dealings with Holzer. *In re Lane*, 127 Ill. 2d at 109.

Second, respondents knew that a judge owed them a substantial sum of money. Yet, at no time did respondents ever disclose to any party in any case they had direct financial ties to the presiding judge (Judge Holzer).

Counsel for respondents contend DR 7—110(A) is unconstitutional. They contend since DR 7—110(A) provides for an exemption for campaign contributions and loans as of July 1, 1980, without regard to the motive with which they are made or whether they are intended to influence, DR 7—110(A) violates amendment XIV, section 1, of the United States Constitution and article I, section 2, of the Illinois Constitution equal protection clauses.

The Illinois Constitution, article VI, section 13(a), states: "The Supreme Court shall adopt rules of conduct for Judges and Associate Judges."

In carrying out the mandate of article VI, section 13(a), it was certainly reasonable to provide for an exception as to gifts and loans to a judge for campaign purposes. All judges are treated equally and fairly by the rule; the integrity of the legal profession is upheld, as the gifts and loans are publicly disclosed and donors are also treated fairly and equally.

Under the Disclosure of Campaign Contributions and Expenditures Act, enacted by the General Assembly in 1974, all candidates and their campaign committees are required to report their loans and campaign contributions; copies of said reports are then available to the public. (Ill. Rev. Stat. 1987, ch. 46, par. 9—1 *et seq.*) This public disclosure results in all attorneys being aware of who contributed or made loans to a judge. Thus, oppos-

ing counsel has knowledge of any campaign gifts or loans, whereas the respondents in this case made their loans to Judge Holzer without disclosure to even their partners and in a manner to make knowledge of their payments unavailable to anyone, even the recipient bank.

We find DR 7—110(A) to be constitutional.

In considering the facts of this case, and for the reasons stated herein, this court orders that respondents be suspended from the practice of law for 30 months.

*Respondents suspended.*

JUSTICES WARD, CLARK and STAMOS took no part in the consideration or decision of this case.