(No. 66770.—<span></span>

*In re* RUSSELL J. TOPPER, Attorney, Respondent.

*Opinion filed March 22, 1990.*

334

WARD, J., took no part.

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Thomas P. Sullivan and Jeffrey D. Colman, of Jenner & Block, of Chicago, for respondent.

JUSTICE RYAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a complaint charg-

ing the respondent, Russell J. Topper, with professional misconduct in connection with a loan that he made to Judge Reginald J. Holzer. A panel of the Hearing Board found against respondent and recommended a two-month suspension. The respondent and the Administrator filed exceptions to the Hearing Board's report and recommendation. The Review Board agreed that a violation of the Code of Professional Responsibility occurred, and a five-person majority of the Board recommended that respondent be disbarred. Three other members of the Board recommended that his law license be suspended for three years. Respondent filed exceptions with this court pursuant to Supreme Court Rule 753(e)(5) (107 Ill. 2d R. 753(e)(5)).

The issue presented in this case is whether an attorney violates our disciplinary rules when, allegedly succumbing to an extortionate demand, he loans $10,000 to a judge presiding over a case in which he is an attorney of record, even though the judge later recuses himself from the matter upon the attorney's request. We conclude that respondent violated our Code of Professional Responsibility.

Respondent was licensed to practice law in Illinois in 1933, and since that time he has been a sole practitioner specializing in an equity and chancery practice. In the fall of 1978, respondent filed a suit, which we will refer to as the Brown case, in the chancery division of the circuit court of Cook County. The suit sought an equitable accounting, a constructive trust, injunctive relief, and compensatory and punitive damages in excess of $2 million as a result of alleged misappropriation of corporate assets. Respondent considered the Brown case the most important one he was handling at the time and testified that it was fiercely contested. The case was randomly assigned to Judge Holzer. Respondent was unfamiliar with Holzer, who had been reassigned in 1978 to the chancery

division. Prior to the Brown case, respondent had appeared before Holzer in only one case. In that case, respondent had been appointed by Judge Sheldon Brown as attorney for the trustee of a protest fund. After Judge Brown left the bench, Holzer was assigned the case. During the proceedings, respondent appeared before Holzer on at least two occasions. In April 1978, Holzer entered an order granting respondent $4,000 in attorney fees for his work in the case.

Prior to February 13, 1979, respondent appeared before Holzer 10 to 15 times to argue various motions in the Brown case. On February 13, 1979, Holzer granted plaintiffs' motion to strike the four affirmative defenses raised, with leave to file an amended "unclean hands" defense. Holzer also ordered discovery closed by April 6, 1979, and set the case for trial on April 11. On February 21, 1979, Holzer granted plaintiffs' motion to change the trial date to April 26. The following day, respondent received a telephone call from Holzer, who asked if respondent would come to see him. The next day, Friday, February 23, 1979, respondent went to Holzer's chambers. Holzer told him that he was deeply in debt, that his wife had to take a job as an insurance agent, that his two daughters were attending universities and that he needed some money. Holzer asked respondent to speak to his banker friends or clients about obtaining a $10,000 unsecured loan. Respondent said he would do what he could to help and mentioned that he had a friend who was a banker. At the hearing before the Hearing Board, respondent testified that at this meeting he viewed Holzer "as a new, young judge and with a terrible problem." Over the weekend respondent unsuccessfully attempted to reach a friend who was on the board of directors at a bank. On Monday, February 26, he contacted his friend, only to be informed that a loan to the judge would not be possible. His friend offered to give re-

spondent the $10,000, but he refused, explaining that he would find a way to get the loan without embarrassing Holzer.

Respondent decided to withdraw $10,000 from his personal account and did so on February 27, 1979. He then obtained a cashier's check payable to "R. Holzer." Respondent went to Holzer's chambers and informed the judge that he had the loan and handed him an envelope with the cashier's check. Holzer expressed his appreciation and stated that the loan would be paid in a couple of months. At the hearing, respondent testified that he felt a "cold dread" when he handed the money to Holzer, though he further testified that he also felt sorry for Holzer. At no time did respondent request or receive a promissory note from Holzer or other document to evidence the transaction. Nor was there any discussion about interest on the obligation. Neither opposing counsel nor the parties in the Brown case were informed about the loan. The same day as this transaction, defendants in the Brown case filed their amended unclean hands defense. On March 23, 1979, Holzer sustained plaintiffs' (who were represented by respondent) motion to dismiss the defense. Respondent testified that the amended unclean hands defense was nearly identical to the original and that Holzer dismissed it on the same grounds as he had done earlier. Between February 27 and May 30, numerous other motions were filed by each party, mainly relating to discovery and extending the trial date. During this time, Holzer entered approximately 12 orders.

On May 21, 1979, respondent met with Holzer in his chambers. He informed the judge that he was concerned about their relationship because of the appearance of impropriety. Respondent noted that there was only a small risk of discovery, but that the danger was too great for the judge. He also testified that he was concerned about

his clients and what would happen to their case if the loan were disclosed. The two discussed the recusal of Holzer, with respondent informing him that no reason need be given for such action. Respondent asked the judge to think the matter over.

Three days later, the two met again in Holzer's chambers and discussed his recusal. Respondent mentioned that he knew of situations where judges had attempted to settle cases before they recused themselves. Holzer then told respondent that he would first attempt to settle the case before recusing himself. On May 29, Holzer briefly met with the attorneys to mediate a settlement. However, the parties were too far apart in their demands and an agreement was not reached. Holzer then recused himself in open court on May 30, 1979, without stating a reason for his action. In the fall of 1979, the case was tried before another judge and concluded with a verdict in favor of respondent's clients for approximately $600,000. The parties later agreed to a $400,000 settlement. Respondent's fee in the Brown case was approximately $100,000.

After the completion of the case, respondent went to see Judge Covelli, a longtime friend of his, and told him about the incident with Holzer. Judge Covelli suggested that respondent inform Judge Donald O'Brien, the presiding judge of the chancery division and another longtime friend of respondent. Respondent testified he immediately told Judge O'Brien what had happened. At the hearing, Judge O'Brien testified that he recalled talking to respondent and that respondent was upset because Holzer was pressing him to buy insurance from his wife. The judge, however, could not recall whether respondent reported the $10,000 loan, but was not certain that respondent did not mention it. Judge O'Brien also testified that he suggested they go see Judge Boyle, the chief judge of the Cook County circuit court, but that respond-

ent declined. According to Judge O'Brien, during the time he presided over the chancery division, from 1968 to 1980, respondent was the only attorney to complain to him about Holzer's conduct.

After completion of the Brown case, respondent twice saw Holzer in 1979. On each occasion he asked for repayment of the loan and Holzer responded that within the next few months he would repay him. On one of these two occasions, Holzer suggested that he would appoint respondent as guardian in a will construction case. Respondent refused, stating that he was busy working on a trial. Earlier, respondent had resolved never to appear in a case before Holzer again, and he did not subsequently appear before him. The $10,000 loan was never repaid.

In 1984, Holzer became the subject of a Federal criminal investigation and respondent was contacted by IRS agents concerning his relationship with Holzer. Respondent agreed to testify before a Federal grand jury and at the Holzer trial as a government witness, under an agreement that what he said would not be used against him so long as he told the truth. Holzer was convicted of, among other crimes, extorting Russell Topper. Scott Turow, the chief trial lawyer for the government in the Holzer case, testified at respondent's hearing that he met and talked with respondent many times during the Holzer case. He further testified that respondent was very cooperative and truthful with the government and expressed remorse over what he had done. As a result of the adverse publicity from the Holzer trial, respondent's law practice was significantly diminished and he has since retired.

Based upon the disclosure of respondent's financial transaction with Holzer, the Administrator of the ARDC filed a complaint alleging that respondent had engaged in professional misconduct. The complaint charged that

respondent's actions violated Disciplinary Rule (DR) 7—110(a) (giving or lending a thing of value to a judge), DR 1—102(a)(3) (engaging in illegal conduct involving moral turpitude), DR 1—102(a)(5) (engaging in conduct that is prejudicial to the administration of justice), DR 1—103(a) (failing to report knowledge of a violation of DR 1—102(a)), and Canon 9 (failing to avoid the appearance of professional impropriety).

At the hearing, in addition to respondent, three other witnesses testified: Scott Turow, former assistant United States Attorney; retired Judge Donald J. O'Brien; and Laura Antoniello, an investigator for the ARDC. Judge Covelli had died before the hearing. The Hearing Board concluded that respondent's loan to Holzer violated the Code of Professional Responsibility. In determining the appropriate discipline, the Board made a number of findings of fact. It found that respondent was reluctant to make the loan, and that he had initially felt sorry for the judge but later feared Holzer would destroy his case. It concluded that he was a victim of Holzer's extortion scheme. The Board found that respondent did not act with corrupt or dishonest motive nor did he bribe a judge in an attempt to obtain a favorable ruling. Rather, he succumbed to extortion demands out of fear of an unfavorable ruling. It found that Holzer's rulings subsequent to the loan did not significantly impact the ultimate outcome of the case. The only evidence in aggravation was his failure to promptly report the transaction and have Holzer removed from the case. However, he did report it to Judge Covelli and he was the only attorney to complain to Judge O'Brien about misconduct by Holzer, though what he reported is in dispute. The Hearing Board also noted that respondent cooperated fully in the investigation and trial of Holzer. As a result of his involvement with Holzer, he lost the respect of friends, judges and colleagues and, in addition

to the damage to his reputation, he suffered economic loss. Moreover, in mitigation, the Board stated that respondent had a distinguished and unblemished legal career, including efforts on behalf of the organized bar and *pro bono* work for churches and civic organizations. The Hearing Board's recommendation was suspension from the practice of law for two months.

The Review Board held that clear and convincing evidence established that respondent violated the five provisions of the Code as charged. In its view, while respondent may have been extorted, he was an experienced attorney who understood what he was doing and knew that what he was doing was wrong. In aggravation, it noted that respondent did not disclose the loan to opposing counsel and was cognizant that such disclosure could be harmful to the Brown case. Also, after the loan was made, respondent allowed Holzer to enter orders in "contested pleadings." Moreover, respondent allowed Holzer to mediate a settlement. Regarding the issue of whether respondent reported the transaction, the Review Board stated that this was not done until after the case was concluded and that there were discrepancies between the respondent's testimony before the grand jury and before the hearing panel, and between respondent's testimony and that of Judge O'Brien. The Review Board believed that respondent's behavior jeopardized the integrity of the judicial system and diminished the public's confidence in the legal system as a whole. The majority therefore recommended disbarment.

Preliminarily, we note that we did not adopt a Code of Professional Responsibility until 1980 and that the loan in question was made in 1979. However, applicability of our Code, and more specifically, DR 7—110(a), was not raised by respondent, the Administrator, or the Hearing or Review Boards. We have previously analyzed loans made to Holzer by attorneys prior to 1980 in rela-

tion to our DR 7—110(a) to determine whether disciplinary action is warranted. (See, *e.g., In re Karzov* (1988), 126 Ill. 2d 33 (loan in 1976 analyzed in regard to DR 7—110(a)); *In re Heller* (1988), 126 Ill. 2d 94 (loans in 1972, 1973, 1976, 1978, 1979 violated DR 7—110(a); and though the court applied the rule existing in 1987, it noted that a disciplinary code had been in existence since 1970); *In re Rothenberg* (1989), 127 Ill. 2d 139 (loans between 1978 and 1984 violated DR 7—110(a)); *In re Weinstein* (1989), 131 Ill. 2d 261 (loans to Holzer between 1978 and 1980 analyzed as violations of DR 7—110(a), though only last loan constituted a violation); *In re Chatz* (1989), 131 Ill. 2d 499 (1978 loan violated DR 7—110(a)).) Though we had not yet adopted the Code of Professional Responsibility, our supreme court rules in effect in 1979 made clear that an attorney should conduct himself in a manner so as not "to defeat the administration of justice or to bring the courts or the legal profession into disrepute" (73 Ill. 2d R. 771), and Rule 61(c)(22) prohibited judges from accepting "gifts or favors from litigants, lawyers practicing before him, or others whose causes are likely to be submitted to him for judgment." (73 Ill. 2d R. 61(c)(22).) Reading these rules in conjunction it is reasonable to conclude that attorneys should have known that it was improper to make a loan to a judge before whom the attorney had a case pending. (See *In re Corboy* (1988), 124 Ill. 2d 29, 41-42 (reading DR 7—110(a) and Rule 65(C)(4) together it is clear that, except under limited circumstances, it is improper to loan money to a judge).) Further support to the conclusion that attorneys in 1979 were aware of the ethical violation of loaning money to a judge is the testimony of respondent that he felt "cold dread" when he handed Holzer the money.

Moreover, in 1970, both the Illinois State Bar Association and the Chicago Bar Association adopted a code of

professional responsibility which stated that a "lawyer shall not give or lend anything of value to a judge, official, or employee of a tribunal." (Illinois Code of Professional Responsibility DR 7—110(A) (1970) (adopted by Illinois State Bar Association & Chicago Bar Association).) Also, the American Bar Association adopted a code of professional responsibility in 1977 which contained a similar disciplinary rule. (See 87 Ill. 2d R. 7—110 (ABA code was the model upon which our code was based and Rule 7—110 is very similar to the ABA rule).) In disciplinary cases prior to 1980, we often relied on these codes when determining whether an attorney's conduct warranted discipline (see, *e.g., In re Friedman* (1979), 76 Ill. 2d 392; *In re Teichner* (1979), 75 Ill. 2d 88), and in the instant case, the Review Board's report specially cited DR 7—110(A) of the Illinois Code of Professional Responsibility. We have also previously reviewed a number of cases involving loans to Holzer made prior to 1980 as violations of DR 7—110(A) of the Illinois Code of Professional Responsibility (1977). (See, *e.g., In re Powell* (1988), 126 Ill. 2d 15 (1979 loan to Holzer violated DR 7—110(A)); *In re Lane* (1989), 127 Ill. 2d 90 (1977 loan violated DR 7—110(A)); *In re Lidov* (1989), 129 Ill. 2d 424 (1976 loans violated DR 7—110(A)); *In re Neistein* (1989), 132 Ill. 2d 104 (loan in late 1979 or early 1980 violated DR 7—110(A)).) The spirit and language of the rules in these various codes are substantially the same and we conclude, therefore, that in reviewing respondent's actions, it is appropriate to analyze them in regard to our Code of Professional Responsibility (107 Ill. 2d R. 7—110(a)) and that such a review will provide better guidance to Illinois lawyers. See *Corboy*, 124 Ill. 2d at 42.

Respondent first argues that we should hold it is not a violation of DR 7—110(a) when an attorney is extorted by a judge and where neither the attorney nor the client

benefits from the payment of money to the judge. The Hearing Board's finding that he was a victim of extortion is questionably against the manifest weight of the evidence, and the Review Board's interpretation of the facts is more understandable. When Holzer first requested the loan, respondent testified, he felt sorry for the judge and viewed him as a young judge with a terrible problem. He did not fear Holzer, but was honored that the judge would come to him in a time of need and respondent said that he would do what he could for him. It was not until later that he feared that a loan under such circumstances could be a violation of the disciplinary rules. Those facts do not bespeak an attorney succumbing to a judge's extortion demands; nevertheless, the Hearing Board found that there was extortion, and Holzer was later convicted in Federal court of extorting respondent and the ruling was affirmed on appeal.

Whether or not the Hearing Board was correct in its characterization of this transaction as extortion, we find that respondent violated the Code. In similar circumstances we have held that an attorney may be disciplined for participation in extortionate activity. (*In re Masters* (1982), 91 Ill. 2d 413, 427-28; *In re Rosenthal* (1978), 73 Ill. 2d 46, 55-57; see *In re Gottlieb* (1985), 109 Ill. 2d 267.) In *Masters*, an attorney acted as a conduit for payments to a person who had threatened his client and who he feared would cause physical harm to his son and himself. These payments went on periodically for four years. The person was eventually convicted as an extortionist in Federal court, with Masters testifying as a government witness. In an attorney disciplinary proceeding, we found that Masters violated the Code of Professional Responsibility and reasoned that though he may have had a reasonable fear of the extortionist it did not explain his failure to report the extortion for more than four years. In *Rosenthal*, two attorneys allowed their cli-

ent to pay $20,000 to a government official after the official arranged to have the client's zoning variance denied. Subsequently, the zoning variance was approved. The government official was eventually convicted of extortion and the attorneys testified against him pursuant to a grant of immunity. In the disciplinary proceeding, the attorneys claimed that they did not withdraw from the case and disclose the crime because of fear of economic, political and physical reprisal against themselves and their client. We, however, held that their conduct was clearly a breach of required professional conduct and that they discredited the integrity of the bar and impeded the administration of justice.

An attorney who feels that he is the subject of an extortion demand has a responsibility not to succumb to the solicitation and has a duty to report the demand. Other than reporting the demand, in this case there were a number of courses of action that respondent could have taken besides loaning money to Holzer while he had a case before that judge. Respondent testified that when he gave the loan to Holzer he experienced "cold dread" and realized what he did was wrong. In the four days between the loan request and the time he gave the money, he should have given greater reflection on his actions and should have decided against providing the loan. If Holzer insisted on the loan or in some other way gave respondent trouble, respondent should have reported him. (See In re Weinstein (1989), 131 Ill. 2d 261, 270 ("Common sense and sound judgment should have guided the respondent in his dealings with Holzer").) Though we commend the fact that he eventually had Holzer recuse himself and that respondent declined to further appear before him, these facts only relate to mitigation.

The respondent argues that his case is unique in that neither he nor his client benefited from the loan pay-

ment. However, the fact that an attorney does not benefit as a result of compliance with an extortion demand is not persuasive. (*In re Carnow* (1986), 114 Ill. 2d 461, 472 ("petitioner's participation in an extortion payment is not in any way *excused* by the fact that he gained no benefit and caused no loss" (emphasis in original)).) As stated in *In re Corboy* (1988), 124 Ill. 2d 29, 38, DR 7—110(a) is designed "to forestall lawyers from seeking to exercise improper influence over the judiciary [and] *to eliminate even the appearance of improper influence.*" (Emphasis added.) We believe that DR 7—110(a) is violated even if the attorney is the subject of an extortion demand and that respondent violated this rule when he succumbed to the request of Holzer and loaned him $10,000.

Respondent also challenges the Review Board's conclusion that he violated DR 1—102(a)(5) by engaging in conduct prejudicial to the administration of justice. We have recently held in a number of cases that the making of a loan to a sitting judge compromises the fairness and impartiality of the tribunal and prejudices the administration of justice. (*In re Neistein* (1989), 132 Ill. 2d 104, 111 (public confidence in the bar, judiciary and entire legal system is damaged); *In re Weinstein* (1989), 131 Ill. 2d 261, 269; *In re Lane* (1989), 127 Ill. 2d 90, 106; *In re Powell* (1988), 126 Ill. 2d 15, 27-28.) Though respondent's violation may not be as serious as in other cases, we do not believe that these holdings are altered by the facts in this case.

The Review Board further found that respondent violated DR 1—102(a)(3) by engaging in illegal conduct involving moral turpitude. In *Powell* we held that in order for there to be a violation of this provision the Administrator must specify which law or laws respondent's activity may have violated. (*Powell*, 126 Ill. 2d at 28.) The complaint in this case fails to indicate which law re-

spondent violated, nor is it specified in the report of either the Hearing Board or the Review Board. In the Administrator's brief before us it is claimed that respondent's activity "constituted nothing less than bribery in violation of state and federal statutes." We do not believe that the Administrator's burden of proving a violation of the rule by clear and convincing evidence has been met (107 Ill. 2d R. 753(c)(6); *In re Karzov* (1988), 126 Ill. 2d 33, 40), and therefore dismiss that portion of the complaint that charges respondent with a violation of DR 1—102(a)(3).

The Administrator also claimed that respondent violated DR 1—103(a) by failing to report a violation of DR 1—102(a)(3) to an authority empowered to investigate or act upon such violation. Respondent contends that he did inform Judge Covelli, who sat in the chancery division, and that he informed Presiding Judge O'Brien. The Review Board found that this provision was violated, basing its ruling in part on the "serious discrepancy" between respondent's testimony at the hearing and his statements to the Federal grand jury in the Holzer case. During his grand jury testimony, respondent claimed that he never discussed the loan transaction with anyone other than Judge Covelli and a personal friend. At the hearing before the Hearing Board, he claimed also to have informed Judge O'Brien. Judge O'Brien, however, was unable to recall a conversation regarding Holzer's solicitation of a loan.

As noted, the Administrator is required to prove a violation of a disciplinary rule by clear and convincing evidence. (*Karzov*, 126 Ill. 2d at 40.) The report of the Hearing Board did not make a specific finding on whether this provision was violated. In its findings, the Hearing Board did believe respondent's testimony that he reported Holzer's activity to Judge Covelli, and that though respondent's and Judge O'Brien's testimony dif-

fered as to what exactly was complained about, respondent was the only attorney to ever report to the presiding judge about improper conduct by Holzer. Also, a review of the record indicates that Judge O'Brien's testimony on this issue was hardly unequivocal. He merely stated that he had no recollection that a discussion regarding a loan was included in their conversation but was not certain that respondent did not mention it. He did recall that respondent was very upset and that he complained Holzer was trying to get people to buy insurance from his wife. Based on the fact that there is not a specific finding of a violation by the Hearing Board, that respondent was, apparently, the only attorney to complain about Holzer's extrajudicial activities and that Judge O'Brien could not recall whether the loan was discussed, we do not believe that a violation of DR 1—103(a) is clearly established. Therefore, we dismiss that portion of the complaint.

The last charge is that respondent violated Canon 9 by failing to avoid the appearance of professional impropriety. We have recently held that Canon 9 does not afford a basis for discipline independent of proof of a violation of one of the disciplinary rules contained within the canon. (*In re Lane* (1989), 127 Ill. 2d 90, 106; *In re D'Angelo* (1988), 126 Ill. 2d 45, 56; *In re Powell* (1988), 126 Ill. 2d 15, 29-30.) Therefore, this charge must also be dismissed because no violation of a disciplinary rule within the canon is alleged.

The next issue presented is what sanction is appropriate in this instance. While we give due deference to the Review Board's findings as to the appropriate sanction, we note that final responsibility for making this determination rests with this court. (*In re D'Angelo* (1988), 126 Ill. 2d 45, 52.) The purpose of discipline is not to punish the attorney, but to maintain the integrity of the profession and to protect the public. (*D'Angelo*, 126 Ill. 2d at

53.) Although we strive for consistency in the sanctions ultimately imposed, we recognize that each case of attorney misconduct is unique and requires an independent evaluation of its relevant circumstances. (*In re Cheronis* (1986), 114 Ill. 2d 527, 535.) In considering the appropriate sanction, we will consider the relevant factors in aggravation and mitigation. *In re Lidov* (1989), 129 Ill. 2d 424, 430.

An attorney who loans anything of value to a sitting judge erodes and damages the public's confidence in the bar, the judiciary, and the entire legal system. (*In re Neistein* (1989), 132 Ill. 2d 104, 111.) In most of our decisions where there has been a question of impropriety involving attorneys loaning money to judges and where we have found a violation of Rule 7—110(a), we have used suspension as the sanction. (*Neistein*, 132 Ill. 2d at 113 (30-month suspension); *In re Chatz* (1989), 131 Ill. 2d 499, 509 (one-year suspension); *In re Lidov* (1989), 129 Ill. 2d 424, 429-31 (six-month suspension); *In re Rothenberg* (1989), 127 Ill. 2d 139, 143 (one-year suspension); *In re Lane* (1989), 127 Ill. 2d 90, 110 (one-year suspension); *In re Karzov* (1988), 126 Ill. 2d 33, 43-45 (18-month suspension); *In re Ketchum* (1988), 124 Ill. 2d 50, 61 (two-year suspension).) Comparing the mitigating factors and aggravating factors present in those cases to the case before us, respondent's conduct also requires a suspension.

In mitigation, the respondent asserts that he did not act with an improper or dishonest motive. Although an attorney's mental state is not relevant when determining whether a violation of DR 7—110(a) has occurred, it is an appropriate factor to consider when deciding the nature and severity of the discipline to be imposed. (*In re Lane* (1989), 127 Ill. 2d 90, 109.) The Hearing Board found that respondent did not act with a corrupt or dishonest motive and was not attempting to bribe Holzer to

insure a favorable ruling in the Brown case. The record supports these findings. See *Lane*, 127 Ill. 2d at 109 (attorney's intent was not to influence the judge); *In re Jones* (1988), 125 Ill. 2d 371, 381; *cf. D'Angelo*, 126 Ill. 2d at 57 (attorney's intent was to curry favor for himself and his firm); *In re Powell* (1988), 126 Ill. 2d 15, 30.

After having made the loan and having realized that he had been wrong in doing so, respondent, to the extent possible, attempted to rectify the wrong. Through respondent's persuasion, Holzer ultimately recused himself and did not participate in the determination of respondent's case. Between the time of the loan and the recusal, the Hearing Board found that Holzer did not make any rulings that significantly impacted the case. We note, however, that the respondent did not bring about Holzer's recusal in a nice, clean-cut manner, but, instead, participated in the charade of an unsuccessful settlement conference to give Holzer the excuse for recusing himself. Nonetheless, to respondent's credit, he was successful in removing Holzer from the case. Also, respondent vowed not to appear before Holzer again and in fact declined Holzer's offer of appointments in cases in which he was the presiding judge. (See *In re Karzov* (1988), 126 Ill. 2d 33, 42 (attorney later appeared before the judge and failed to disclose his financial dealings to the opposing side); *In re Ketchum* (1988), 124 Ill. 2d 50, 58 (judge continued to be "a good source of business for" attorney after loan).) Further, respondent reported Holzer's solicitations to other judges, including Judge Donald O'Brien, the presiding judge in the chancery division. According to the evidence, respondent is, apparently, the only lawyer whom Holzer solicited to report or complain about such conduct to other members of the judiciary, though Judge O'Brien testified that respondent refused to report Holzer to Chief Judge Boyle.

Moreover, respondent fully cooperated in the Federal action against Holzer and expressed deep remorse for what he had done. Throughout this disciplinary proceeding he has also cooperated fully and never before in his more than 50 years as an attorney has he been involved in a disciplinary action. Last, we note that respondent has performed *pro bono* services for many churches and civic organizations, and has been an active member of various bar associations.

There are certain factors that aggravate the violation here. Respondent testified that at the time he handed the money over to Holzer he felt "cold dread" as a result of his actions. However, even with this realization that he did something wrong, he waited almost three months before having Holzer recuse himself. In the meantime he never informed the defendants in the Brown case or their attorneys that he had made a loan to the judge. (See *In re Chatz* (1989), 131 Ill. 2d 499, 508 (failure to disclose debtor-creditor relationship considered an aggravating factor).) Respondent also allowed a judge indebted to him to make rulings in a case where he acted as counsel, and, though these orders may not have been significant, it surely was improper to allow Holzer to attempt to settle the case before his recusal. Moreover, respondent never received a promissory note for the loan and, other than two verbal requests to Holzer, he did not diligently pursue repayment of the loan. See *Chatz*, 131 Ill. 2d at 508; *In re Lidov* (1989), 129 Ill. 2d 424, 431 (attorney received a promissory note and persistently sought and received full payment of the loan).

Respondent's conduct, though a violation of the Code, does not warrant disbarment. (*In re D'Angelo* (1988), 126 Ill. 2d 45 (respondent provided several judges and many city officials with free rental cars with the intent to curry favor for himself and his firm); *In re Powell*

(1988), 126 Ill. 2d 15 (respondent procured a loan for Holzer with intent to curry favor while he had a case pending before the judge, and he directly involved his client in the scheme); *In re Heller* (1988), 126 Ill. 2d 94 (respondents practiced before Holzer during an eight-year period when they assisted Holzer in procuring loans and they requested Holzer to handle an additional number of their cases).) The two cases involving loans to judges in violation of DR 7—110(a) where we did not disbar or suspend the respondents are distinguishable. Respondent in *In re Weinstein* (1989), 131 Ill. 2d 261, was a nonlitigating attorney who had been making loans to Holzer for a period of years. We determined that these were proper under DR 7—110(a). However, respondent later represented a *pro bono* client in an isolated litigation matter which was randomly assigned to Holzer. The case was settled before any of the judicial proceedings began. During that time, respondent loaned Holzer more money. We determined that this loan was improper. We held that censure was appropriate because the nature of respondent's practice made it unlikely that he would ever appear before the judge again, he did not make the loan in an attempt to influence the judge, and there was extensive other mitigating evidence. Respondent in *In re Jones* (1988), 125 Ill. 2d 371, was an attorney in private practice who had formerly been a circuit court judge. He had known Holzer for years prior to the improper loan, as both a friend and a judicial colleague. After Holzer failed to repay a $15,000 loan, respondent successfully sued Holzer for repayment, although he was unable to satisfy the judgment. We concluded the loan violated DR 7—110(a); however, we determined that no sanction was necessary because there was no evidence of venal purpose, and there was little likelihood that respondent would ever appear before that court or that judge in the future. Therefore, we discharged respondent.

Respondent before us did not have a prior relationship with Holzer and was very likely to appear before either him or other judges in the division in the near future. In addition, there are a number of other aggravating factors which compare to those cases in which we have suspended respondents for violating DR 7—110(a). After taking into consideration the mitigating and aggravating factors, we conclude that the appropriate sanction is suspension for a period of one year.

*Respondent suspended.*

JUSTICE WARD took no part in the consideration or decision of this case.